276 P.3d 502

**Vicki L. POUNDERS, individually and as surviving wife of Dudley W. Pounders, Deceased, Plaintiff/Appellant,**

v.

**ENSERCH E & C, INC. nka EECI, Inc.; Riley Power, Inc. fna Riley Stoker Corporation; BW/IP, Inc., and its wholly-owned subsidiaries, Defendants/Appellees.**

**No. 1 CA–CV 11–0282.**

Court of Appeals of Arizona, Division 1, Department A.

April 17, 2012.

---

Stephen I. Leshner PC By Stephen I. Leshner, Phoenix and Waters & Kraus LLP By Charles S. Siegel, pro hac vice, Mark A. Linder, pro hac vice, Dallas, TX, Attorneys for Plaintiff/Appellant.

Stinson Morrison Hecker LLP By Larry J. Wulkan, and Hawkins Parnell Thackston & Young LLP, Phoenix, By Edward M. Slaughter, pro hac vice, Dallas, TX, Attorneys for Defendant/Appellee Enserch E & C, Inc., n/k/a EECI, Inc.

Jennings, Haug & Cunningham, LLP By Larry J. Crown, Hillary P. Gagnon, William F. Begley, Phoenix, and Kurowski Bailey & Shultz LLC By David J. Fisher, Swansea, IL, Attorneys for Defendant/Appellee BW/IP, Inc.

Jennings, Haug & Cunningham, LLP By Larry J. Crown, Travis A. Pacheco, Phoenix and Herrick & Associates, PC By David P. Herrick, pro hac vice, Dallas, TX, DeHay & Elliston, LLP By Bridgett N. Whitmore, pro hac vice, Dallas, TX, Attorneys for Defendant/Appellee Riley Power, Inc., f/k/a Riley Stoker Corporation.

## OPINION

TIMMER, Judge.

¶ 1 The appeal in this wrongful death case requires us to employ choice-of-law principles to determine whether the substantive law of Arizona or New Mexico applies. If we agree with the trial court that New Mexico law applies, we then must decide whether the court properly applied New Mexico's statute of repose to find that suit is barred against Appellees. For the reasons that follow, we affirm.

## BACKGROUND

¶ 2 From 1969 to 1974 and again from 1977 to 1983, Arizona Public Service ("APS") employed Dudley W. Pounders to work as a welder at the Four Corners Power Plant (the "Plant") located in New Mexico. Mr. Pounders performed repair and maintenance work that required him to disturb and remove asbestos contained within equipment and insulation. As a result, he inadvertently inhaled asbestos fibers. Mr. Pounders lived in New Mexico while he worked at the Plant.

¶ 3 In May 2008, Mr. Pounders and his wife, Vicki, were living in Arizona when doctors diagnosed him with mesothelioma, a type of cancer purportedly caused by asbestos exposure. The Pounders initiated a personal injury lawsuit the following month in Arizona against several defendants, alleging defective design, construction, and use of asbestos in the Plant and a failure to warn of the dangers of asbestos. These defendants included appellees Enserch E & C, Inc. ("Enserch"), successor-in-interest to the architect and construction manager for three units at the Plant, BW/IP, Inc. ("BW"), parent company to the manufacturer, designer, and supplier of ten pumps used at the Plant, and Riley Power, Inc. ("Riley"), which designed and manufactured industrial boilers used at the Plant. After Mr. Pounders died in August, Mrs. Pounders amended the complaint to assert a claim for wrongful death.

¶ 4 During the course of litigation, the trial court granted Appellees' motion to apply New Mexico law to substantive issues concerning Mrs. Pounders' claims because Mr. Pounders' injuries occurred in that state.

The court subsequently granted summary judgment for Appellees after applying New Mexico's statute of repose, New Mexico Statutes Annotated § 37-1-27 (West 2012),[1] which bars all claims arising from improvements made to real property and asserted more than ten years after substantial completion of the improvements. This timely appeal followed.

## DISCUSSION

¶ 5 Mrs. Pounders argues the trial court erred by entering summary judgment because (1) Arizona substantive law, which does not include a statute of repose for tort claims,[2] applies to her lawsuit, and (2) even assuming New Mexico law applies, the court misapplied New Mexico's statute of repose.

¶ 6 The trial court properly granted summary judgment if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). In reviewing the court's ruling, we determine de novo whether any disputed issues of material fact exist and whether the court properly applied the law. *Best Choice Fund, LLC v. Low & Childers, P.C.*, 228 Ariz. 502, 506, ¶ 10, 269 P.3d 678, 682 (App.2012) (as amended). We view the facts and inferences arising from them in the light most favorable to Mrs. Pounders as the party against whom judgment was entered. *Id.* Finally, we review a choice-of-law issue de novo as a question of law. *Baroldy v. Ortho Pharm. Corp.*, 157 Ariz. 574, 578, 760 P.2d 574, 578 (App. 1988).

### I.  Choice of law

¶ 7 Although the law of the forum state governs procedural matters, substantive issues are resolved by "the law of the jurisdiction to which the court is referred by the choice-of-law rules of the forum." *Cardon v. Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 206, 841 P.2d 198, 201 (1992) (citations omitted). All parties acknowledge, and we

agree, the statutes of repose in Arizona and New Mexico are matters of substantive law, and we must apply choice-of-law tenets to determine which state's laws apply. *Albano v. Shea Homes Ltd. P'ship*, 227 Ariz. 121, 127, ¶ 24, 254 P.3d 360, 366 (2011) (noting statutes of repose define substantive rights); *see also Rice v. Dow Chem. Co.*, 124 Wash.2d 205, 875 P.2d 1213, 1217 (1994) ("The general authority is that statutes of repose are to be treated ... as part of the body of a state's substantive law in making choice-of-law determinations.").

¶ 8 Arizona follows principles set forth in the Restatement (Second) of Conflict of Laws ("Restatement") (1971) to resolve conflict-of-law issues. *Bryant v. Silverman*, 146 Ariz. 41, 42–43, 703 P.2d 1190, 1191–92 (1985). Section 175 provides that in wrongful death actions, "the local law of the state where the injury occurred determines the rights and liabilities of the parties" unless another state has "a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied." Restatement § 175; *see also* Restatement § 146 (providing same principles for all personal injury actions). In other words, the laws of the state where the injury occurred presumptively apply unless another state has a more significant relationship. *Phillips v. Gen. Motors Corp.*, 298 Mont. 438, 995 P.2d 1002, 1008 (2000) (characterizing Restatement § 175 as establishing a presumption). To resolve the parties' dispute, we initially decide where Mr. Pounders' "injury occurred"—New Mexico or Arizona—and then consider whether the other state has a more significant relationship to the event causing his injury and with the parties.

### A.  Place of injury

¶ 9 Mrs. Pounders argues her husband's injury occurred in Arizona because he was living there when the effects of inhaling as-

---

1.  Absent material revision after the date of the events at issue, we cite a statute's current version.

2.  Arizona has an eight-year statute of repose applicable to contract and warranty claims asserted against parties who develop, design, engi-

neer, or construct improvements to real property. Ariz.Rev.Stat. ("A.R.S.") § 12–552 (West 2012). Unlike the New Mexico statute of repose, § 12–552 would not bar Mrs. Pounders' claims against Appellees as the statute does not apply to claims for personal injury or wrongful death. A.R.S. § 12–552(D).

bestos manifested in injury—mesothelioma. She contends Mr. Pounders did not sustain an injury in New Mexico because inhalation of asbestos absent the onset of disease is not harmful. Appellees counter that Mr. Pounders sustained injury when he inhaled asbestos while working in New Mexico because asbestos fibers immediately damaged his lung tissue. The issue presented by the parties is whether, for purposes of resolving a choice-of-law dispute, a plaintiff diagnosed with a slow-developing disease is injured at the time of exposure to conditions causing the disease or at the time the disease manifests. The appellate courts in this state have not yet addressed the issue.

¶ 10 We start with Restatement § 175. Comment b to that section provides:

> b. *Place of injury.* The place where the injury occurs is the place where the force set in motion by the actor first takes effect on the person. This place is not necessarily that where the death occurs. Nor is it the place where the death results in pecuniary loss to the beneficiary named in the applicable death statute.

The parties do not dispute that "the force set in motion" by Appellees was exposing Mr. Pounders to asbestos and failing to warn him of its dangers. Their quarrel centers on where this exposure "first [took] effect" on Mr. Pounders.

¶ 11 Mrs. Pounders urges us to decide that asbestos exposure first takes effect on the person inhaling it when an asbestos-related illness develops. Until that time, she points out, the person does not possess a personal injury claim. She relies primarily on cases discussing compensability of claims based on exposure to harmful conditions. *DeStories v. City of Phoenix,* 154 Ariz. 604, 605, 744 P.2d 705, 706 (App.1987), for example, concerned a personal injury lawsuit filed by construction workers who sued their employer for exposing them to asbestos dust, which increased their risk of future asbestos-related illness and caused them to suffer emotional distress due to their fear of developing a future serious illness. This court held that an increased risk of injury and resulting mental anguish is not compensable absent proof of present physical harm or a medically identifiable effect from the asbestos exposure or associated emotional distress. *Id.* at 607–08,

610, 744 P.2d at 708–09, 711. Other cases cited by Mrs. Pounders reach similar conclusions. *Transamerica Ins. Co. v. Doe,* 173 Ariz. 112, 115, 840 P.2d 288, 291 (App.1992) (deciding plaintiffs exposed to HIV-infected blood did not sustain a "bodily injury" entitling them to recover under an insurance policy because they suffered no resulting physical injury); *Burns v. Jaquays Mining Corp.,* 156 Ariz. 375, 376–78, 752 P.2d 28, 29–31 (App.1987) (concluding plaintiffs who inhaled asbestos fibers that changed lung tissue could not sue for increased risk of future asbestos-related disease or for distress caused by risk of future onset of disease before any disease becomes manifest).

¶ 12 *DeStories, Transamerica,* and *Burns* are distinguishable as they address the *compensability* of an effect on the plaintiff as a result of a defendant's conduct rather than the *existence* of that effect, which is the linchpin of Restatement § 175 comment b. Indeed, in *DeStories,* the court acknowledged the distinction:

> In a sense, the injury in this case is the inhalation of asbestos fibers. It was not an *actionable* injury, however, meaning it was not legally cognizable, until at least one evil *effect* of the inhalation became manifest. There was no cause of action at all, in other words, until the [disease] asbestosis appeared.

154 Ariz. at 609–10, 744 P.2d at 710–11 (quoting *Jackson v. Johns–Manville Sales Corp.,* 781 F.2d 394, 412 (5th Cir.1986), *abrogated on other grounds as recognized in Centennial Ins. Co. v. Ryder Truck Rental, Inc.,* 149 F.3d 378, 382 n. 10 (5th Cir.1998)). And the *Burns* court recognized that inhaling asbestos fibers has an immediate effect by deciding that, even in the absence of a manifestation of asbestos-related diseases, the plaintiffs were entitled to damages for the cost of medical monitoring in light of expert testimony that plaintiffs were at great risk for developing such diseases. 156 Ariz. at 380, 752 P.2d at 33. Consequently, as these cases focus on injury compensability rather than injury existence, we are not persuaded by them to adopt Mrs. Pounders' position.

¶ 13 Courts outside Arizona that have considered the "place of injury" associated with slow-developing diseases have reached opposing conclusions. For example, in *Rice v. Dow Chemical Co.*, 875 P.2d at 1217–18, the Washington Supreme Court applied Restatement § 145 [3] and concluded that an individual exposed to dangerous pesticides in Oregon and later diagnosed with leukemia in Washington was "injured" in Oregon. The court rejected plaintiff's contention he was injured in Washington because he was living there when his claim accrued at the time of his diagnosis years after exposure. *Id.* at 1218. The court recognized that "[t]he place an injured Plaintiff's action accrues may be completely unrelated to where the plaintiff was injured" and then reasoned that the plaintiff was injured in Oregon where he was primarily exposed to the pesticides. *Id.* After examining other factors, the court held Oregon law applicable and affirmed dismissal of the plaintiff's complaint under Oregon's statute of repose. *Id.* at 1218–19. Other courts have reached similar conclusions.[4]

¶ 14 The Nevada Supreme Court reached a contrary conclusion in *Wyeth v. Rowatt*, —— Nev. ——, 244 P.3d 765 (2010). In that case, three women took the defendant's hormone therapy drug for a number of years before being diagnosed with breast cancer in Nevada. *Id.* at 770. Because two of the women started taking the drug in other states before moving to Nevada and continuing to take the drug there, the defendant asserted that the laws of the other states applied to substantive issues. *Id.* at 776. The court applied Restatement § 146, which is applicable to personal injury actions and identical to Restatement § 175, and decided that the place of injury was Nevada because it was the state where the last event necessary for a tort claim occurred—diagnosis of the cancer. *Id.* at 776–77. The court reasoned that this selection conforms to Nevada's definition of "injury," which necessitates the existence of damages and that a plaintiff knows or has reason to know of the defendant's potential liability. *Id.* at 776. Other courts have entered similar holdings.[5]

3. Restatement § 145 sets forth general principles for choice-of-law issues in tort cases. Restatement § 145 cmt. a. It provides a "most significant relationship" test to assess which state's law should be applied to a particular issue that is akin to the Restatement § 175 paradigm.

4. *See Clayton v. Eli Lilly & Co.*, 421 F.Supp.2d 77, 79–80 (D.D.C.2006) (applying Restatement and finding that plaintiff was injured in Alabama where her mother filled prescription for dangerous drug and used it, exposing plaintiff *in utero*, although adverse effects of exposure diagnosed while plaintiff lived in Puerto Rico); *Harding v. Proko Indus., Inc.*, 765 F.Supp. 1053, 1054–57 (D.Kan.1991) (conducting § 145 analysis and finding Texas law applied where decedent exposed in that state while he resided there even though mesothelioma was detected while decedent lived in Kansas); *Smith v. Walter C. Best, Inc.*, 756 F.Supp. 878, 880–81 (W.D.Pa.1990) (conducting Restatement analysis and concluding plaintiff was injured by silica dust where exposure occurred and not where he subsequently suffered from silicosis); *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 76, 97–98, 105 Cal. Rptr.3d 378, 225 P.3d 516 (2010) (determining that law of state of exposure to asbestos governs rather than law of state where diagnosis of mesothelioma occurred); *Celotex Corp. v. Meehan*, 523 So.2d 141, 146 (Fla.1988) (deciding New York law applied where decedent was exposed in New York to asbestos and was a resident of New York even though asbestos-related disease manifested in Florida).

Decisions addressing the meaning of the term "bodily injury" in insurance policies have similarly held that injury occurs at the time of exposure to conditions that ultimately cause a slow-developing disease. Although, as Mrs. Pounders points out, these cases rest on principles of contract interpretation rather than the Restatement, they nevertheless support Appellees' position as they employ similar analyses in determining the place of injury. *See, e.g., Ins. Co. of N. Am. v. Forty–Eight Insulations, Inc.*, 633 F.2d 1212, 1218–23 (6th Cir.1980) (determining that "bodily injury" triggering insurance coverage occurs at time of exposure to asbestos), *as amended on reh'g by* 657 F.2d 814 (1981); *Chantel Assocs. v. Mount Vernon Fire Ins. Co.*, 338 Md. 131, 656 A.2d 779, 785 (1995) (concluding that direct damage to cells and bodily tissue by lead paint exposure constitutes "bodily injury" under insurance contract).

5. *In re Joint E. & S. Dist. Asbestos Litig.*, 721 F.Supp. 433, 435–36 (E.D.N.Y. & S.D.N.Y.1988) (following the "last event necessary" approach and concluding the last event necessary refers to the place where the plaintiff became ill); *Trahan v. E.R. Squibb & Sons, Inc.*, 567 F.Supp. 505, 507–08 (M.D.Tenn.1983) (finding plaintiff injured in Tennessee where adverse effects developed due to exposure *in utero* to dangerous drug even though exposure occurred in North Carolina, where she was born).

¶ 15 We are persuaded that *Rice* and like cases provide the better analysis and hold that the "effect" of a defendant's conduct need not manifest as a physical impairment or disease in order to constitute an injury for purposes of determining where an injury took place. First, comment b to Restatement § 175 does not tie the initial effect of an act or omission to compensability or accrual; it merely requires an "effect." Second, deeming the initial effect of conduct, regardless of compensability and accrual, as the injury for choice-of-law purposes promotes the Restatement goals of certainty, predictability, and uniformity of result. Restatement § 175, cmt. d (setting forth values furthered by section's principles). Specifically, our decision cements the "place of injury" at the time the allegedly tortious conduct impacted the plaintiff rather than at the onset of a disease that may slowly develop as the plaintiff moves from location to location before an eventual diagnosis. Our decision also eliminates the potential for a costly "trial within a trial" to determine the precise time and place a disease manifested before eventual discovery, thereby furthering the Restatement goal of ease of determination. *Id.* Having decided that the "place of injury" is not dependent on manifestation of a physical impairment or disease, we now consider where Appellees' alleged tortious conduct first took effect on Mr. Pounders.

¶ 16 The forces put in motion by Appellees—allegedly exposing Mr. Pounders to asbestos without warning of its dangers—first took effect on Mr. Pounders when he inhaled the asbestos fibers into his lungs while living and working in New Mexico. According to an affidavit of expert witness John C. Maddox, M.D., submitted to the trial court by Mrs. Pounders, mesothelioma is a "dose response disease" and "[e]ach and every time" Mr. Pounders inhaled asbestos dust, it contributed to the onset of the disease. And as previously explained, *see supra* ¶ 12, Arizona courts have acknowledged the immediate effects of asbestos inhalation. *DeStories,* 154 Ariz. at 609–10, 744 P.2d at 710–11; *Burns,* 156 Ariz. at 380, 752 P.2d at 33. Other courts and commentators have made similar findings. *See, e.g., Forty–Eight Insulations,* 633 F.2d at 1222 (noting medical evidence is uncontroverted that "tissue damage takes place at or shortly after the initial inhalation of asbestos fibers"); 60 Am.Jur. *Trials* § 73, at 8 (1996) ("Upon inhalation or ingestion, the long and sharp [asbestos] amphibole fibers ... bury themselves along the mucous lining and deep in the lung wall and are inextricable by the lung. Once embedded in the lung wall, the fibers begin the long process of impairing the lung to function properly.").

¶ 17 We hold that Appellees' purportedly tortious conduct first took effect on Mr. Pounders in New Mexico where he repeatedly inhaled asbestos fibers, which eventually manifested years later in Arizona as mesothelioma and gave rise to a claim against Appellees and others. For this reason, New Mexico is the place of injury for purposes of Restatement § 175, and New Mexico substantive law presumptively applies unless application of Restatement § 6 principles reveals Arizona has a more significant relationship with events or the parties.

**B. Most significant relationship**

¶ 18 Restatement § 6 provides that a court should consider the following principles to determine which state has the most significant relationship to the occurrence and the parties:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Additionally, contacts described in Restatement § 145(2) should be taken into account in applying the § 6 principles:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*See also Bryant,* 146 Ariz. at 44–45, 703 P.2d at 1193–94 (considering § 145(2) contacts in applying § 6). Deciding whether another state has more significant contacts than the state where the injury occurred turns on the quality of the contacts rather than the quantity. *See id.* at 45, 703 P.2d at 1194.

*Factors favoring New Mexico*

¶ 19 For the reasons explained, *see supra* ¶¶ 9–17, New Mexico is the place of injury. This factor is particularly meaningful as the injury took place in a fixed location and was therefore predictable rather than fortuitous. *Garcia v. Gen. Motors Corp.,* 195 Ariz. 510, 517, ¶ 22, 990 P.2d 1069, 1076 (App.1999) (stating place of injury loses strength as factor if injury is merely fortuitous); *see, e.g., Baroldy,* 157 Ariz. at 579, 760 P.2d at 579 (concluding manifestation of disease in North Carolina from diaphragm use fortuitous as plaintiff could have used device in any state). Additionally, Mr. Pounders was a New Mexico resident while he worked at the Plant and suffered asbestos exposure. Restatement § 175 cmt. f ("When ... the decedent ... resided ... in the state where the conduct occurred, this state is more likely to be the state of most significant relationship and therefore the state of the applicable law....").

¶ 20 New Mexico is also the state where a significant part of the tortious conduct occurred because that is where Appellees purportedly engaged in defective construction and use of asbestos at the Plant. Restatement § 145(2) cmt. e (noting that state of injury likely to be state of conduct when issues involve standards of conduct as that state has natural concern in resolving such issues).[6] We reject Mrs. Pounders' contention that this factor should be discounted because Appellees chose to conduct their activities in New Mexico as its tort laws are favorable for defendants. *See* Restatement § 145 cmt. e. The record does not suggest Appellees chose to do business only in states with favorable tort laws.

¶ 21 As previously explained, *see supra* ¶ 15, the principles of certainty, predictability, and uniformity of result, as well as ease of application of law, favor New Mexico. Additionally, applying New Mexico substantive law furthers that state's natural interest in regulating businesses that construct or distribute defective products within its borders and deterring such conduct. *See Jackson v. Chandler,* 204 Ariz. 135, 139, ¶ 17, 61 P.3d 17, 21 (2003) (recognizing that Arizona has significant interest in regulating conduct within its borders and deterring future tortious conduct); *Jaurequi v. John Deere Co.,* 986 F.2d 170, 175 (7th Cir.1993) (holding that state has interest in regulating businesses that distribute defective products in that state). And New Mexico has an interest in protecting the justified expectations of both businesses and injured parties that New Mexico law will apply in any lawsuit arising from conduct and injury in New Mexico. *See Jaurequi,* 986 F.2d at 175–76 (holding that Missouri has interest in providing a forum for victims injured as a result of activities conducted within its borders).

¶ 22 Finally, in comparing the relevant policies of New Mexico and Arizona regarding claim viability, New Mexico's interests are weightier. The New Mexico legislature enacted its ten-year statute of repose to preclude claims asserted years after completion of a construction project. *Coleman v. United Eng'rs & Constructors, Inc.,* 118 N.M. 47, 878 P.2d 996, 1000 (1994). According to the New Mexico Supreme Court, the legislature was persuaded that "[t]he passage of time might make the preparation of a reasonable defense impossible for those involved in the

---

**6.** The record before us does not reveal where Appellees designed their products or decided not to warn Plant employees of asbestos dangers, but Mrs. Pounders does not assert that any decisions were made in Arizona. *See Baroldy,* 157 Ariz. at 579, 760 P.2d at 579 (holding with failure-to-warn claim, place of conduct is where tortious decision was made); *In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979,* 644 F.2d 594, 607 (7th Cir.1981) (concluding design of jet engine took place in California where defendant performed this work); *Norwood v. Raytheon Co.,* 237 F.R.D. 581, 595 (W.D.Tex.2006) (when applying most significant relationship test "[i]n a products liability case alleging defective design, courts generally consider the place where the conduct causing the injury occurred to be the place where the product was designed and manufactured").

design, planning, supervision, inspection, or administration of construction of an improvement to real property." *Id.* Although Arizona has a policy to compensate tort victims, *Jackson*, 204 Ariz. at 137, ¶ 7, 61 P.3d at 19, New Mexico's interests are more deeply affected by the decision whether to apply its statute of repose. Restatement § 6 cmt. f ("In general, it is fitting that the state whose interests are most deeply affected should have its local law applied."). If the New Mexico statute of repose can be readily bypassed by a victim's relocation to another state before manifestation of disease, even though the tortious conduct and injury occurred in New Mexico, the statute has diminished application to the types of claims specifically targeted by the legislature. Conversely, Arizona is not opposed to statutes of repose—it has one applicable to contract and warranty actions. A.R.S. § 12–552 (West 2012). And Arizona's policy of compensating tort victims is not eviscerated by application of the New Mexico statute of repose because a victim may still sue the property owner and obtain redress if a claim is made within the applicable statute of limitations.

*Factors favoring Arizona*

¶ 23 Mr. Pounders resided in Arizona when he was diagnosed with mesothelioma, underwent treatment, and subsequently died. Additionally, while he worked at the Plant, he was employed by APS, an Arizona public service corporation. Mrs. Pounders continues to reside in Arizona and will feel the impact of her husband's loss in Arizona. No evidence suggests the Pounders engaged in "forum shopping" by moving to Arizona to take advantage of more favorable tort laws. Thus, Arizona has an interest in securing just compensation for one of its citizens—Mrs. Pounders. *Jackson*, 204 Ariz. at 137, ¶ 7, 61 P.3d at 19.

*Comparison of interests*

▮ ¶ 24 Applying the Restatement principles, we conclude Mrs. Pounders fails to overcome the presumption that New Mexico substantive law applies because Arizona has a more significant relationship to the events and parties. The only significant factor favoring Arizona is the Pounders' residency in Arizona when Mr. Pounders was diagnosed

with mesothelioma, engaged in treatment, and subsequently died. But that factor alone cannot overcome the presumption favoring New Mexico because it would effectively mean Arizona would always apply its substantive laws to resolve claims brought by Arizona residents. We agree with the Washington Supreme Court's assessment in analogous circumstances:

> The only significant contact with Washington, and corresponding state interest, is Plaintiff's residency in Washington. Plaintiff has identified Washington's interest as its interest in "seeing to it that its residents are compensated for personal injuries".... Although this is a real interest, recognizing this as an overriding concern, despite the lack of contacts, would mean that Washington law would be applied in all tort cases involving any Washington resident, regardless of where all the activity relating to the tort occurred. Furthermore, residency in the forum state alone has not been considered a sufficient relation to the action to warrant application of forum law. *See, e.g.,* Restatement (Second) of Conflict of Law § 145 cmt. e (1971) ("The fact ... that one of the parties is domiciled ... in a given state will usually carry little weight of itself."); *Ferren v. General Motors Corp.*, 137 N.H. 423, 427, 628 A.2d 265 (1993) (" 'The possibility that the employee might change his residence at any time, after the injury, and thus shift the burden of support to another state, makes the fact of present residence less significant.' ") (quoting Robert A. Leflar, *American Conflicts Law* § 160, at 329–30 (3d ed. 1977)).

*Rice*, 875 P.2d at 1218–19.

¶ 25 In summary, Mr. Pounders was injured in New Mexico, although his compensable claim did not accrue until he was diagnosed with mesothelioma years later while living in Arizona. We therefore presume that New Mexico substantive law applies, unless Arizona has a more significant relationship with the events causing Mr. Pounders' injury or with the parties. For the reasons explained, Arizona's interests do not overcome the presumption. Consequently, the trial court correctly held that New Mexico's statute of repose applies to Mrs. Pounders' lawsuit.

## II. Statute of repose

¶ 26 Mrs. Pounders next argues the trial court erred by applying New Mexico Statutes Annotated § 37–1–27, New Mexico's statute of repose, to find her claims barred against Riley and BW.[7] Section 37–1–27 provides in relevant part as follows:

No action to recover damages ... for injury to the person, or for bodily injury or wrongful death, arising out of the defective or unsafe condition of a physical improvement to real property ... against any person performing or furnishing the construction or the design, planning, supervision, inspection or administration of construction of such improvement to real property, and on account of such activity, shall be brought after ten years from the date of substantial completion of such improvement; provided this limitation shall not apply to any action based on a contract, warranty or guarantee which contains express terms inconsistent herewith.

Mrs. Pounders does not contest that Riley and BW made "improvement[s] to real property" by designing and installing boilers and pumps, respectively, at the Plant.[8] Instead, she argues these Appellees are not protected by the statute of repose because she sued them in their roles as suppliers of "off-the-shelf asbestos components." Appellees respond they designed their products for the Plant and used asbestos products as integral parts of these unique designs, bringing them within the protection of the statute of repose.

¶ 27 We are in the curious position of determining the breadth of the only New Mexico appellate decision parsing the roles of a defendant that provides construction and supply services. In *Howell v. Burk*, 90 N.M. 688, 568 P.2d 214, 217 (N.M.Ct.App.1977), a child was injured when he ran into a glass door or window at the Albuquerque Airport. He sued PPG Industries, Inc. ("PPG"), which manufactured, sold, and installed the glass, and other parties, including the City of Albuquerque, which owned the airport. *Id.* The

City asserted a cross-claim against PPG. *Id.* Because PPG had installed the glass more than ten years before initiation of the lawsuit, it moved for summary judgment based on the statute of repose. *Id.*

¶ 28 After reviewing the purpose of the statute, the *Howell* court held that "a materialman who does no more than manufacture or supply materials does not benefit from the statute," but a party that performs construction or design does benefit. *Id.* at 223. According to the court, whether PPG was entitled to invoke the statute of repose turned on the "activity" for which it was sued. *Id.* To the extent the plaintiff sued PPG as a manufacturer or seller of glass, PPG could not assert the statute as a defense. *Id.* But if the plaintiff sued PPG as the designer or installer of glass, the statute shielded PPG from the lawsuit. *Id.* Because the plaintiff's complaint and the City's cross-claim fell in the latter category, the court affirmed summary judgment for PPG. *Id.; see also Pfeifer v. City of Bellingham*, 112 Wash.2d 562, 772 P.2d 1018, 1022–23 (1989) (employing *Howell*'s activity analysis to decide that a seller who happens to be a builder is not shielded by Washington's statute of repose if sued for supplying a faulty product).

¶ 29 Employing the *Howell* activity analysis, Mrs. Pounders contends both Riley and BW were sued in their capacities as materialmen that supplied asbestos to the Plant. She points to evidence that both supplied asbestos-laden components in their products to comply with the customer's specifications as demonstrating these entities' separate and distinct roles as suppliers as well as designers and installers. She further asserts that whether the boilers and pumps were mass-produced or customized is irrelevant to determining an entity's role as supplier, pointing out that New Mexico courts have never made such a distinction. Riley and BW urge a contrary view, pointing out they were engaged as designers and installers rather than materialmen.

¶ 30 We start our resolution of the parties' dispute by examining the activities of Riley

---

7. Mrs. Pounders does not challenge application of the statute of repose against Enserch.

8. BW's subsidiary, Byron Jackson Pumps, designed and installed the pumps, which included asbestos-related components. For ease of reference, we refer to BW as the entity that performed these functions.

and BW at the Plant. Riley designed, constructed, and supervised the erection of two industrial, custom-designed boilers at the Plant. At Riley's instruction, its subcontractor insulated the boilers with a product containing asbestos. BW designed, manufactured, and oversaw the installation of ten industrial pumps, which were specially designed for the Plant. Each pump was the size of a small car and was integrated with the Plant structure as a permanent feature. Some of the pump components contained asbestos. Thus, the record establishes that both Riley and BW served as designers and installers at the Plant, and Mrs. Pounders does not contest that their products were improvements to real property. The narrow and determinative issue before us, then, is whether designers and installers of improvements to real property can also be considered "suppliers" to the extent they provide defective materials to construct their designs.

¶ 31 We are guided by cases addressing the applicability of statutes of repose to entities that play multi-faceted roles in making improvements to real property. In *Ball v. Harnischfeger Corp.*, 877 P.2d 45, 45–46 (Okla.1994), for example, the Oklahoma Supreme Court addressed whether a company that both designed and manufactured a crane to fit specifications established by the owner of a port terminal and installed the crane as an improvement to real property could invoke Oklahoma's statute of repose. After employing an activity analysis, the court held that if the manufacturer of a product also acted as a designer, planner, construction supervisor or observer, or constructor, the statute of repose would apply. *Id.* at 50. "It is the specialized expertise and rendition of particularized design which separates those protected from mere manufacturers and suppliers." *Id.* Because the crane was designed to meet the customer's specifications, the crane manufacturer also served as a con-

struction observer, and the crane improved real property, the court held that the crane company was protected by the statute of repose. *Id.* A majority of courts that have addressed the applicability of a statute of repose to an entity serving multiple roles have made holdings following this line of reasoning.[9]

¶ 32 We are persuaded that New Mexico's statute of repose applies to entities, like Riley and BW, which design and install customized products that constitute improvements to real property without regard to whether such entities also supplied the materials used in their designs and installations. Neither party was engaged to supply or manufacture asbestos-laden insulation or product components nor were they in the business of selling such items. Rather, Riley and BW were engaged to utilize specialized expertise to design, manufacture, and install customized boilers and pumps, respectively, for use at the Plant as improvements to real property. *See Ball*, 877 P.2d at 50; *Dighton v. Fed. Pac. Elec. Co.*, 399 Mass. 687, 506 N.E.2d 509, 515 (1987) (stating statute of repose only intended to apply to "economic actors who perform acts of 'individual expertise' akin to those commonly thought to be performed by architects and contractors—that is to say, to parties who render particularized services for the design and construction of particular improvements to particular pieces of real property"). Because the asbestos used in the boilers and pumps was integral to their function, the fact Riley and BW supplied the component material did not convert these parties into materialmen, who are not protected by the statute of repose. *See Pendzsu v. Beazer East, Inc.*, 219 Mich.App. 405, 557 N.W.2d 127, 132 (1996). To hold otherwise would provide an "end run" around the statute's protection whenever a constructor or designer supplies materials for use in construction rather than obtaining those materials from the owner.

9. *See Ball*, 877 P.2d at 47 n. 3 (collecting cases); *Fine v. Huygens, DiMella, Shaffer & Assocs.*, 57 Mass.App.Ct. 397, 783 N.E.2d 842, 847–48 (2003) (applying activity analysis and concluding statute of repose applies to design professionals who supplied exterior wall panel but does not apply to suppliers who provided stock windows); *Abbott v. John E. Green Co.*, 233 Mich.App. 194, 592 N.W.2d 96, 102 (1998) (holding under activi-

ty analysis contractors who designed and installed asbestos product were entitled to protection of statute of repose); *Pendzsu v. Beazer East, Inc.*, 219 Mich.App. 405, 557 N.W.2d 127, 132 (1996) (rejecting plaintiff's argument that entity that designed, manufactured, and installed coke ovens was a "supplier" for purposes of statute of repose).

¶ 33 For these reasons, we hold that New Mexico's statute of repose applies to shield entities which supply defective materials as integral components of products specially designed, and installed as improvements to real property. Of course, if such entities separately supply other materials in aid of construction of real property that do not relate to the products designed and installed by these entities, the statute of repose would not apply. Because Riley and BW fall within the former category, the trial court correctly found that the statute of repose barred Mrs. Pounders' claims against them.

## CONCLUSION

¶ 34 For the foregoing reasons, we hold that New Mexico substantive law, including its statute of repose, applies to this lawsuit. Because the trial court correctly applied the statute to find that Mrs. Pounders' claims against Appellees are barred, we affirm the entry of summary judgment.

CONCURRING: MAURICE PORTLEY, Presiding Judge, and ANDREW W. GOULD, Judge.