IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

————————————

VICKI L. POUNDERS, INDIVIDUALLY, AND AS SURVIVING WIFE OF DUDLEY
W. POUNDERS, DECEASED,
*Plaintiff/Appellant,*

*v.*

ENSERCH E&C, INC. NKA EECI, INC.; RILEY POWER, INC. FNA RILEY STOKER
CORPORATION; BW/IP, INC., AND ITS WHOLLY OWNED SUBSIDIARIES,
*Defendants/Appellees.*

————————————

No. CV-12-0173-PR
Filed August 21, 2013

————————————

Appeal from the Superior Court in Maricopa County
The Honorable Joseph B. Heilman, Judge
No. CV2008014007
**AFFIRMED**

Opinion of the Court of Appeals, Division One
229 Ariz. 433, 276 P.3d 503 (App. 2012)
**AFFIRMED**

————————————

COUNSEL:

Steven I. Leshner, Steven I. Leshner, P.C., Phoenix and Charles S. Siegel, Mark A. Linder (argued), Waters & Kraus, L.L.P., Dallas, TX, for Vicki L. and Dudley W. Pounders

Edward M. Slaughter, Robert Brooks Gilbreath (argued), Hawkins Parnell Thackston & Young LLP, Dallas, TX and Larry J. Wulkan, Stinson Morrison Hecker LLP, Phoenix, for Enserch E&C, Inc., nka EECI, Inc.

Larry J. Crown (argued), Hillary P. Gagnon, Jennings, Haug & Cunningham, L.L.P., Phoenix, for BW/IP, Inc.

David P. Herrick (argued), Herrick & Associates, P.C., Dallas, TX and Larry J. Crown, Travis A. Pacheco, Jennings, Haug & Cunningham, L.L.P., Phoenix, for Riley Power, Inc., fna Riley Stoker Corporation

Stanley G. Feldman, Haralson, Miller, Pitt, Feldman & McAnally, P.L.C., Tucson and David L. Abney, Knapp & Roberts, P.C., Scottsdale, for Amici Curiae Arizona Association for Justice and Arizona Trial Lawyers Association

J. Michael Low, Low & Cohen, PLLC, Phoenix and Mark A. Behrens, Shook, Hardy & Bacon, L.L.P., Washington, D.C., for Amici Curiae Coalition for Litigation Justice, Inc., et al.

Charles M. Callahan, Christian Dichter & Sluga PC, Phoenix and Andrew J. Petersen, Humphrey & Petersen, P.C., Tucson, for Amicus Curiae Arizona Association of Defense Counsel

———————

JUSTICE BRUTINEL authored the opinion of the Court, in which CHIEF JUSTICE BERCH, VICE CHIEF JUSTICE BALES, JUSTICE PELANDER, and JUDGE ESPINOSA* joined.

———————

JUSTICE BRUTINEL, opinion of the Court:

¶1      We consider whether a wrongful death claim based on exposure to asbestos in New Mexico, which resulted in mesothelioma diagnosed thirty years later in Arizona, is subject to the substantive law of New Mexico or Arizona. Because New Mexico has the more significant relationship to this claim, that state's law applies.

**I.**

¶2      Dudley Pounders, a New Mexico resident, worked as a welder for Arizona Public Service ("APS") at the Four Corners Power Plant in New Mexico from approximately 1969 to 1974 and again from 1979 to 1983. While performing repair and maintenance work on valves and other equipment at the Plant, he inhaled asbestos fibers.

¶3      Mr. Pounders moved to Arizona in the late 1980s. In May 2008, he was diagnosed with mesothelioma, a type of cancer associated with asbestos exposure. The following month, Mr. and Mrs. Pounders filed

suit in Arizona against Enserch E&C, Inc., the successor-in-interest to the architect and construction manager for three units at the Plant; BW/IP, Inc., a parent company to the manufacturer, designer, and supplier of ten of the pumps used at the Plant; and Riley Power, Inc., the designer and manufacturer of industrial boilers used at the Plant (collectively "Enserch"). After Mr. Pounders died in August 2008, Mrs. Pounders amended the complaint to assert claims for wrongful death.

¶4 The trial court granted Enserch's motion to apply New Mexico substantive law to Mrs. Pounders' claims, including New Mexico's statute of repose. Based on that statute, which bars actions arising from improvements to real property filed more than ten years after their completion, N.M. Stat. Ann. § 37-1-27, the court granted summary judgment in favor of Enserch.

¶5 The court of appeals affirmed. *Pounders v. Enserch E&C, Inc.*, 229 Ariz. 433, 444 ¶ 33, 276 P.3d 502, 513 (App. 2012). Applying § 175 of the Restatement (Second) of Conflict of Laws (the "Second Restatement"), the court concluded that New Mexico was the place of injury, *id.* at 436–39 ¶¶ 9–17, 276 P.3d at 505–08, and had the "most significant relationship" to the litigation under the factors listed in the Second Restatement §§ 145 and 6, *id*. at 439–41 ¶¶ 18–24, 276 P.3d at 508–10. As a result, the court agreed with the trial court that New Mexico's statute of repose applied to Mrs. Pounders' wrongful death claim and affirmed summary judgment. *Id*. at 441 ¶ 25, 444 ¶ 34, 276 P.3d at 510, 513.

¶6 We granted review to consider issues of statewide importance regarding the choice of law in wrongful death actions involving long-latency diseases. We declined, however, to review the ruling that the New Mexico statute of repose, if applicable, bars the wrongful death claim. We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24. We review choice-of-law questions de novo. *Swanson v. Image Bank, Inc.*, 206 Ariz. 264, 266 ¶ 6, 77 P.3d 439, 441 (2003).

## II.

¶7 The choice of law is dispositive because New Mexico and Arizona differ in their limitation periods for bringing certain personal injury claims. New Mexico's statute of repose, N.M. Stat. Ann. § 37-1-27, bars personal injury claims arising out of construction of improvements on real

property when such claims are brought more than ten years after the completion of the improvement. This bar applies even if the injury has not yet been discovered. In contrast, Arizona does not have a similar statute of repose; instead it has a statute of limitations, which bars personal injury claims asserted more than two years after the claim is discoverable. *See* A.R.S. § 12-542(1); *see also Doe v. Roe*, 191 Ariz. 313, 322 ¶ 29, 955 P.2d 951, 960 (1998).

**¶8** Arizona is the forum state, and thus its law will govern both procedural issues and the choice of law regarding substantive issues. *See Cardon v. Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 206, 841 P.2d 198, 201 (1992). Statutes of repose are matters of substantive law. *Albano v. Shea Homes Ltd. P'ship*, 227 Ariz. 121, 127 ¶ 24, 254 P.3d 360, 366 (2011). Hence, Arizona's choice-of-law rules will determine whether New Mexico's or Arizona's substantive law applies.

**¶9** Arizona follows the Second Restatement. *Jackson v. Chandler*, 204 Ariz. 135, 136 ¶ 5, 61 P.3d 17, 18 (2003). Section 175, entitled "Right of Action for Death," initially directs us to look to

> the "local law of the state where the injury occurred . . . unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

**¶10** Thus, we must first determine whether the injury occurred in Arizona or New Mexico. Enserch urges us to find that the place where the plaintiff was exposed to harmful materials is the place of injury. It relies, in part, on the fact that mesothelioma is a dose-response disease in which each inhalation of asbestos dust "takes effect" on the lungs causing tissue damage. *See Ins. Co. of N. Am. v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212, 1222 (6th Cir. 1980). According to Enserch, each inhalation of asbestos fibers began damaging Mr. Pounders' lung tissues; thus he was injured in New Mexico.

**¶11** Mrs. Pounders counters that a "manifestation" theory better comports with Arizona's case law regarding compensability of asbestos-related claims. Citing *Burns v. Jaquays Mining Corp.*, 156 Ariz. 375, 376–78, 752 P.2d 28, 29–31 (App. 1987), and *DeStories v. City of Phoenix*, 154 Ariz. 604, 605, 744 P.2d 705, 706 (App. 1987), she maintains that Arizona

4

does not recognize mere exposure to a toxic substance, without apparent effects, to be an actionable "injury," even if such exposure produces cellular changes. Because Mr. Pounders developed the requisite compensable injury, mesothelioma, while residing in Arizona, Mrs. Pounders argues that Arizona is the place of injury.

¶12 As the court of appeals noted, courts that have considered this question have reached opposing conclusions. *See Pounders*, 229 Ariz. at 438 ¶ 13, 276 P.3d at 507. In *Rice v. Dow Chemical Co.*, the Washington Supreme Court rejected the plaintiff's manifestation argument and held that the plaintiff was "injured" in Oregon, where he was primarily exposed to dangerous pesticides, rather than in Washington, where he eventually developed leukemia. 875 P.2d 1213, 1217–18 (Wash. 1994); *see also Celotex Corp. v. Meehan*, 523 So. 2d 141, 145–46 (Fla. 1988) (applying New York law where decedent was exposed in New York, but manifested asbestos-related disease in Florida). Conversely, in *Wyeth v. Rowatt*, the Nevada Supreme Court held that the plaintiffs were injured "where the slow-developing disease [was] first ascertainable," because before manifestation, "there is no legally compensable injury to sue upon." 244 P.3d 765, 776–77 (Nev. 2010). The *Wyeth* court emphasized the compensability of the injury because a plaintiff's damages are not based on subcellular injuries occurring at exposure, but rather arise from the development of a diagnosable disease. *Id.* at 776 (discussing *Renfroe v. Eli Lilly & Co.*, 686 F.2d 642, 647 (8th Cir. 1982)).

¶13 We agree with Mrs. Pounders that the state where the disease first manifests is the "place of injury," but our reasoning rests on tracing the Restatement's evolution in analyzing conflict-of-laws questions and the "elements of continuity [between the First and Second Restatements]." *See* 1 Second Restatement (Introduction) IX.

¶14 The First Restatement adopted the rule of *lex loci delicti*, or "place of wrong," as the controlling factor when determining which state's law applied. It defined the "place of wrong" as where the "last event necessary to make an actor liable for an alleged tort takes place." Restatement (First) of Conflict of Laws § 377. Note 1 to § 377 explains that the place of wrong is where the "harmful force takes effect upon the body." Read in conjunction with § 377's last-event-necessary rule, Note 1 clarifies that the harmful force takes effect upon the body when the force takes legal effect. Comment (a) to § 377 confirms this view, explaining:

> Although by statute, the state in which any event in the train of consequences, starting with the act of the wrongdoer and continuing until the final legal consequences thereof, may make the event a wrong, the situation is, in most cases, governed by the common law. The common law selects a particular point in the train of events as the place of wrong.

¶15    The Second Restatement recognized that "[s]ituations arise where the state of the last event (place of injury) bears only a slight relationship to the occurrence and the parties with respect to the particular issue." Introductory Note, Second Restatement, Ch. 7, Wrongs, Topic 1, Torts. For that reason, the Second Restatement rejected the *lex loci* rule in favor of a multi-factored contacts analysis. Although the Second Restatement deemphasized the *primacy* of the place of injury, it maintained the *definition* of the place of injury as the place of the last event necessary. Indeed, the Second Restatement equated the state of the last event with the place of injury. *See id.* Accordingly, the place of injury for purposes of § 175 is where the last event necessary for liability occurs.

¶16    The court of appeals based its analysis on comment (b) to § 175, finding that the title of that comment — Place of Injury — provided guidance as to the meaning of the phrase "where the injury occurred" in § 175. *Pounders*, 229 Ariz. at 437 ¶ 10, 439 ¶ 15, 276 P.3d at 506, 508. Comment (b) provides:

> **Place of injury**. The place where the injury occurs is the place where the force set in motion by the actor first takes effect on the person. This place is not necessarily that where the death occurs. Nor is it the place where the death results in pecuniary loss to the beneficiary named in the applicable death statute.

¶17    Based on the language of comment (b), the court of appeals determined that the Second Restatement "does not tie the initial effect of an act or omission to compensability or accrual; it merely requires an 'effect.'" *Pounders*, 229 Ariz. at 439 ¶ 15, 276 P.3d at 508. But this conclusion overlooks how comment (b)'s "takes effect" language functions within the First and Second Restatements.

¶18    Comment (b) reflects that the "place of injury" differs from the "place of death" — a distinction uniquely applicable to wrongful death

6

cases. The remainder of comment (b) supports this interpretation by providing: "This place [of injury] is not necessarily that where the death occurs. Nor is it the place where the death results in pecuniary loss to the beneficiary named in the applicable death statute."

¶19 Furthermore, comment (b)'s "takes effect" language is noticeably absent from Second Restatement § 146, § 175's counterpart governing personal injury actions. It seems unlikely that the drafters of the Restatement intended that the state "where the injury occurred" means one thing for wrongful death cases and another for personal injury cases or that they intended to have a "first effect" test that applies only to wrongful death actions, but not to tort claims generally. This is particularly true in light of § 175's comment (a), which states that "the law applicable to wrongful death is selected by the same principles as control selection of the law applicable to personal injuries in general (see § 146)."

¶20 The court of appeals also held that using comment (b) to "deem[] the initial effect of conduct, regardless of compensability and accrual, as the injury for choice-of-law purposes promotes the Restatement goals of certainty, predictability, and uniformity of result." *Pounders*, 229 Ariz. at 439 ¶ 15, 275 P.3d at 508 (citing Second Restatement § 175 cmt. d). But only the place of the last event necessary for liability, that is — the place of injury — is certain and predictable. If a defendant exposed a plaintiff to harmful chemicals in several states during the course of the plaintiff's employment, pinpointing where the "injury" occurred would be difficult. Besides, it is not a foregone conclusion that exposure to harmful chemicals will cause a compensable injury. Determining that the "place of injury" is the place where the last event necessary for liability occurred (that is, the place where the injury manifested), which can only occur in one location, preserves the Restatement goals of certainty, predictability, and uniformity of result.

¶21 Noting the continuity between the two Restatements and giving "place of injury" the same meaning in the Second Restatement's Introductory Note, § 146, and § 175, we find that the "place of injury" is the state where "the last event necessary" for liability occurs.

¶22 With that definition in mind, we address where the last event necessary occurred for Mr. Pounders. For long-latency diseases, the "last event" takes place when the disease is discoverable because, until then, a legally compensable injury does not exist. For asbestos-related diseases

like mesothelioma, the last event occurs upon manifestation because manifestation provides the requisite compensable injury to support a personal injury cause of action. *See Burns*, 156 Ariz. at 376–78, 752 P.2d at 29–31 (requiring a physical manifestation of bodily injury to sustain a remedy at law for asbestos exposure); *DeStories*, 154 Ariz. at 610, 744 P.2d at 711 (requiring a "medically identifiable effect" in order to bring a cause of action for asbestos-exposure). Here, the "last event necessary" — the manifestation of mesothelioma — occurred in Arizona. Accordingly, we find that Arizona is where the "force set in motion by the actor first [took] effect" and for purposes of the Second Restatement is thus the place of injury.

¶23   Having determined that Arizona is the place of injury, we now turn to the choice-of-law analysis under § 175. The court of appeals construed § 175 to "presumptively apply" the law of the place of injury unless another state has a more significant relationship. *Pounders*, 229 Ariz. at 436 ¶ 8, 276 P.3d at 505 (citing *Phillips v. Gen. Motors Corp.*, 995 P.2d 1002, 1008 (Mont. 2000)).

¶24   To the extent that such a presumption suggests that the place of injury is entitled to greater weight than the other Second Restatement choice-of-law factors, we disagree. We interpret § 175 simply to recognize a default rule that the law of the place of injury controls unless another "state has a more significant relationship to the occurrence and the parties." *See* Second Restatement § 175 cmt. d; *accord State ex rel. Broglin v. Nangle*, 510 S.W.2d 699, 702 (Mo. 1974) (describing the Second Restatement's place of injury methodology as allowing for "certainty of result absent some local compelling state interest to the contrary"); *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992) (describing the Second Restatement's approach as "a 'default' rule whereby trial courts can apply the law of the place where the injury occurred when each state has an almost equal relationship to the litigation"); *see also Sosa v. Alvarez-Machain*, 542 U.S. 692, 709 n.7 (2004) ("Under the Second Restatement, tort liability is determined 'by the local law of the state which . . . has the most significant relationship to the occurrence and the parties,' taking into account 'the place where the injury occurred . . . .'" (first alteration in original) (emphasis added) (quoting Second Restatement § 145(2))).

¶25   Indeed, Arizona case law has described nearly identical language in Second Restatement § 146, as only "direct[ing] [the court] initially to the law of the place where the accident occurred," and instead focusing on the

state that has the most significant relationship to the issue. *Garcia v. Gen. Motors. Corp.*, 195 Ariz. 510, 517 ¶ 20, 990 P.2d 1069, 1076 (App. 1999). Consequently, the place-of-injury factor suggests that the law of that place will apply, but it is only one factor to consider in determining which state has the most significant relationship to the case. *Id*.

**A.**

**¶26** We therefore must consider whether New Mexico has a more significant relationship to the parties and the issue than does Arizona in light of the contacts specified in § 145(2) and the choice-of-law principles in § 6(2). *See id*.; Second Restatement § 175 cmt. d.

**¶27** Section 145(2) outlines four contacts that are particularly relevant when resolving choice-of-law issues in tort cases:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

**¶28** First, although Arizona is the place of injury, this factor holds little significance in our contacts analysis because the injury's occurrence in Arizona is fortuitous; the Pounders could have moved anywhere after leaving New Mexico. *See* Second Restatement § 145 cmt. e ("Situations do arise, however, where the place of injury will not play an important role in the selection of the state of the applicable law. This will be so, for example, when the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue . . . ."); *see also Garcia*, 195 Ariz. at 517–18 ¶ 22, 990 P.2d at 1076–77 (holding that although rollover accident occurred in Idaho, and was thus the place of injury, this determination merited little consideration because the accident "just happened to occur there"); *Baroldy v. Ortho Pharm. Corp.*, 157 Ariz. 574, 579, 760 P.2d 574, 579 (App. 1988) (dismissing the place-of-injury factor because the "[p]laintiffs could have duplicated their relationship with [the defendant] anywhere," and was therefore "mere happenstance").

**¶29**   The second § 145 contact, "where the conduct causing the injury occurred," is New Mexico.  Mrs. Pounders claims that Enserch negligently created "hazardous and deadly conditions through the use of asbestos, asbestos-containing products or machinery requiring or calling for the use of asbestos or asbestos-containing products in close proximity to Decedent."  Not only did the use of asbestos occur in New Mexico, but Enserch correctly points out that "all conduct allegedly causing Mr. Pounders' injury centered in New Mexico."

**¶30**   Because the place of injury is merely fortuitous, we assign particular weight to the second § 145 contact in light of comment (e) to § 145:

> Choice of the applicable law becomes more difficult in situations where the defendant's conduct and the resulting injury occurred in different states.  When the injury occurred in two or more states, or when the place of injury cannot be ascertained or is fortuitous and, with respect to the particular issue, bears little relation to the occurrence and the parties, the place where the defendant's conduct occurred will usually be given particular weight in determining the state of the applicable law.

**¶31**   The third § 145 contact requires that we look to the "domicil[e], residence, nationality, place of incorporation and principal place of business of the parties."   Enserch and Riley have principal places of business in Massachusetts while BW/IP has its principal place of business in Texas.

**¶32**   Mr. Pounders lived in Arizona when his mesothelioma was discovered.  This factor is entitled to little weight because, as noted above, Mr. Pounders could have moved anywhere at any time after his exposure to asbestos.  *See Rice*, 875 P.2d at 1219 (residency in the forum state alone is not considered sufficiently related to the action to warrant applying forum law because '[t]he possibility that the employee might change his residence at any time, after the injury, and thus shift the burden of support to another state, makes the fact of present residence less significant" (quoting *Ferren v. Gen. Motors Corp.*, 628 A.2d 265, 268 (N.H. 1993))); *see also* Second Restatement § 145 cmt. e ("The fact . . . that one of the parties is domiciled . . . in a given state will usually carry little weight of itself.").  Consequently, the third § 145 contact is minimally relevant.

¶33 The last § 145 contact considers "when the injury was caused by an act done in the course of [a] relationship, the place where the relationship is centered." Second Restatement § 145 cmt. e. This contact is inapplicable because Enserch and Mr. Pounders did not have an on-going relationship centered in a particular state. APS, an Arizona company, employed Mr. Pounders. None of the other parties ever employed Mr. Pounders.

¶34 In sum, the first, third, and fourth § 145 contacts are of little relevance, and the second contact — where the injury-inducing conduct occurred — is entitled to particular weight. *See id*. We therefore find that New Mexico has the greater interest in Mrs. Pounders' wrongful death claim.

**B.**

¶35 We must now apply the § 145 contacts in light of the choice-of-law principles enunciated in § 6. Second Restatement § 145(2), § 175; *see also Garcia*, 195 Ariz. at 518 ¶ 23, 990 P.2d at 1077.

¶36 Section 6(2) provides basic policy considerations that apply in every choice-of-law case:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

¶37 We agree with the parties that "the needs of the interstate system," the "basic policies underlying the particular field of law," and the "ease in the determination and application of the law to be applied," the first, fifth, and seventh factors respectively, will not be materially affected by the application of either Arizona or New Mexico law. Likewise, the sixth factor, "certainty, predictability, and uniformity of result," has minimal

relevance because that principle is primarily concerned with deterring forum shopping, *see* Second Restatement § 6 cmt. i, which is not an issue here.

**¶38** The Second Restatement also reflects that the fourth factor, "the protection of justified expectations," may be less important in negligence cases. Second Restatement § 6 cmt. g. In this case, Enserch claimed to have relied on New Mexico's limited liability arising from their business at the Plant if litigation should occur. While an after-the-fact assertion to have relied on New Mexico law is not particularly persuasive, to the extent that the justified expectations principle applies, it supports application of New Mexico law.

**¶39** Because of the diminished significance of the listed factors in tort cases, the remaining § 6 principles — § 6(2)(b), "the relevant policies of the forum," and § 6(2)(c), "the relevant policies of other interested states and the relevant interest of those states in the determination of the particular issue" — assume greater importance. *See* Second Restatement § 145 cmt. b (identifying the policies of the forum and interested states as factors of relatively greater importance in tort cases).

**¶40** We compare "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue," Second Restatement § 6(2)(c), in light of § 145's contacts, considering particularly the policy of the dominant state. *See* Second Restatement § 145 cmt. b (describing that § 6 requires evaluating "the relevant policies of other interested states and particularly of the state with the dominant interest in the determination of the particular issue"); *see also Johnson v. Am. Leather Specialties Corp.*, 578 F. Supp. 2d 1154, 1171 (N.D. Iowa 2008) (when § 145's contacts establish that a state's interest is dominant, the § 6 principles, which consider and compare the policies and relative interests of the nominee states, also weigh in favor of applying the dominant state's law).

**¶41** Arizona, the forum state, has an interest in obtaining just compensation for its residents who suffer injury, *Bryant v. Silverman*, 146 Ariz. 41, 47, 703 P.2d 1190, 1196 (1985), and deterring wrongs against its citizens, *see Jackson*, 204 Ariz. at 139 ¶ 17, 61 P.3d at 21. Mr. Pounders was an Arizona resident when he was diagnosed with mesothelioma, and Mrs. Pounders continues to reside in Arizona.

¶42    Conversely, as provided in its statute of repose, New Mexico seeks to protect businesses engaging in the improvement of real property from liability after a fixed number of years. New Mexico enacted § 37-1-27 as a response to judicial expansion of liability for contractors doing business in New Mexico. *See Howell v. Burk*, 568 P.2d 214, 219 (N.M. App. 1977). The statute was intended "'to provide a measure of protection against claims arising years after' substantial completion of construction projects," because the lapse in time may have made asserting reasonable defenses seemingly impossible. *Coleman v. United Eng'rs & Constructors, Inc.*, 878 P.2d 996, 1000 (N.M. 1994) (quoting *Howell*, 568 P.2d at 221).

¶43    We conclude that New Mexico's policy of enforcing its statute of repose is entitled to deference because the § 145 contacts reflect that New Mexico has a substantial interest in this case. *See* Second Restatement § 6 cmt. f ("In general, it is fitting that the state whose interests are most deeply affected should have its local law applied.").

¶44    Mrs. Pounders argues that New Mexico has only a de minimus interest in applying its statute of repose because Enserch is not a domiciliary of New Mexico. But the lack of New Mexico domicile does not diminish New Mexico's interest. "[A]s a practical and realistic matter the state's interest in having [its] law applied to the activities of out-of-state companies within the jurisdiction is equal to its interest in the application of [its] law to comparable activities engaged in by local businesses . . . ." *McCann v. Foster Wheeler LLC*, 225 P.3d 516, 530 (Cal. 2010). A state has a "legitimate interest in attracting out-of-state companies to do business within the state" and "advance the opportunity of state residents to obtain employment and the products and services offered by out-of-state companies." *Id.* Thus, we conclude New Mexico has as great an interest in applying its statute of repose to non-resident defendants as it does to applying its statute to resident defendants.

¶45    Applying New Mexico's statute of repose also furthers New Mexico's other interests. *See* Second Restatement § 6 cmt. f. Reflecting the concern raised in *Howell* and *Coleman*, an extensive amount of time — more than forty years — has passed since Enserch and its affiliates planned, designed, and supervised the installation and placement of the pumps and boilers at the Plant. As the court of appeals noted, "[i]f the New Mexico statute of repose can be readily bypassed by a victim's relocation to another state before manifestation of disease, even though the tortious conduct . . . occurred in New Mexico, the statute has

diminished application to the types of claims specifically targeted by the legislature." *Pounders*, 229 Ariz. at 441 ¶ 22, 276 P.3d at 510.

**¶46** Weighing the relevant policies of the two states and considering the other § 6 principles in light of the § 145 contacts, we conclude that § 6 favors applying New Mexico law.

### III.

**¶47** We agree with the trial court and the court of appeals that New Mexico substantive law applies to Mrs. Pounders' wrongful death claim and thus affirm the trial court's summary judgment and the decision of the court of appeals. However, because we find that Arizona is the "place of injury," we vacate paragraphs 8–17 and 24–25 of the court of appeals' opinion.

---

\* Pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Philip G. Espinosa, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.