749 P.2d 1367

**Gloria BATES, Petitioner,**

v.

**The SUPERIOR COURT OF the STATE OF ARIZONA, In and For the COUNTY OF MARICOPA; The Hon. Rufus Coulter; and The Hon. Phillip Marquardt, Judges Thereof; and Nationwide Insurance Company, Real Party in Interest, Respondents.**

**No. CV–87–0013–PR.**

Supreme Court of Arizona, En Banc.

Jan. 25, 1988.

Langerman, Begam, Lewis and Marks by Amy G. Langerman, Neil J. Harrington, Phoenix, for petitioner.

Jennings, Strouss & Salmon by Michael A. Beale, Michael J. O'Connor, Phoenix, for real party in interest.

FELDMAN, Vice Chief Justice.

This petition for review asks us to reverse a partial summary judgment selecting Michigan as the source of law on issues of insurance bad faith and punitive damages. The basic question is whether the correct choice is the law of Arizona, Michigan or Ohio. We granted review to clarify and settle issues of statewide importance. Rule 23, Ariz.R.Civ.App.P., 17A A.R.S.; Rule 8(b), Ariz.R.P.Spec.Act., 17A A.R.S. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

### FACTS AND PROCEDURAL SUMMARY

In October 1975, plaintiff, Gloria Bates, was involved in an automobile accident in Illinois. The crash caused chronic spinal injuries, requiring extensive physical therapy and medication. At the time of the mishap, Gloria was covered by a Michigan no-fault automobile insurance policy issued to her husband, Raymond, by defendant Nationwide Insurance Company. Raymond and Gloria were Michigan residents when the policy was purchased and when the accident occurred. Following the accident, Gloria submitted a claim for medical expenses to Nationwide's Michigan office. Nationwide accepted the claim and started to provide benefits for Gloria's accident-related medical treatment.

Ultimately, Gloria moved from Michigan to Arizona. Her treatment continued, and she sent her medical bills to Nationwide's adjuster in Michigan. Nationwide always paid. When the Michigan adjuster retired in 1984, Nationwide transferred the claim file to its home office in Columbus, Ohio. Gloria now sent her medical bills to Ohio, and Nationwide continued to pay. On February 28, 1985, the new Ohio-based claims adjuster asked Gloria to see a doctor in Phoenix to determine whether her treatment was still medically necessary. Following an examination in March of 1985, the doctor concluded that Gloria's condition was "stationary" and that she no longer needed medical care for her injuries. Based upon the examining physician's report, Nationwide's Ohio claims staff discon-

tinued Gloria's payments because they were no longer "reasonable and necessary" under the medical pay coverage terms of the automobile insurance policy.

After futile requests for reconsideration, Gloria sued Nationwide in Arizona for breach of contract and for bad faith insurance practices. Nationwide conducts substantial insurance business in Arizona, so no question exists with regard to *in personam* jurisdiction. *Cf. Batton v. Tennessee Farmers Mutual Insurance Co.,* 153 Ariz. 268, 273, 736 P.2d 2, 7 (1987) (exercise of personal jurisdiction improper when defendant insurance company did not conduct its business "knowing that it was regularly coming into contact with Arizona"). Nationwide moved for partial summary judgment to establish which state's law would govern the bad faith claim. Nationwide asserted that Michigan's law should control because that was the state with the most significant contacts with the asserted bad faith. The issue was vital to the case because Michigan apparently does not yet formally recognize a cause of action for first-party insurance bad faith. Both Ohio and Arizona allow such claims, awarding punitive damages in appropriate cases.

In arguing the choice of law question to the trial court, Nationwide emphasized the following "contacts" with Michigan:

1. The parties entered into the insurance contract in Michigan, which has a unique, no-fault insurance system;

2. The plaintiff was a Michigan domiciliary when the contract was formed;

3. Nationwide drafted the insurance policy to comply with Michigan law;

4. Nationwide computed the policy rates in conformity with Michigan no-fault law;

5. Nationwide maintained plaintiff's claim file in Michigan until the retirement of the adjuster originally in charge of the case.

Plaintiff argued that the two states with the most significant contacts to the bad faith claim were Ohio and Arizona. Plaintiff stressed these contacts relating to Ohio and Arizona:

1. Nationwide is incorporated in Ohio;

2. Nationwide's principal place of business is Ohio;

3. The decision to terminate benefits was made in Ohio;

4. Plaintiff is an Arizona resident and was an Arizona resident when Nationwide terminated her benefits;

5. The "injury" which is the subject of the action occurred in Arizona.

The trial judge granted Nationwide's motion for partial summary judgment, concluding that Michigan was the state with the "most significant source of contacts." Following denial of a motion for reconsideration, plaintiff sought relief by petition for special action [1] filed in the court of appeals. When the court of appeals declined to accept jurisdiction, plaintiff petitioned this court for review. The trial court's summary judgment order is nonappealable. *Tucson Telco Federal Credit Union v. Bowser,* 6 Ariz.App. 10, 429 P.2d 502 (1967). We accepted jurisdiction because the issue is purely legal and a correct implementation of Arizona's choice of law principles is crucial both to the present litigation and the proper disposition of cases involving multistate torts. *See generally Wendelken v. Superior Court,* 137 Ariz. 455, 671 P.2d 896 (1983).

## I. ARIZONA CHOICE OF LAW PRINCIPLES

Arizona courts apply the principles of the Restatement (Second) of Conflict of Laws (1971) [2] to determine the controlling law for multistate torts. *Schwartz v. Schwartz,* 103 Ariz. 562, 565, 447 P.2d 254, 257 (1968). Restatement § 6(2) lists the general factors relevant to choosing the applicable rule of law and § 145 gives further guidance for

---

1. In Arizona, relief formerly obtained by writs of prohibition, mandamus or certiorari is now obtained by "special action." Rule 1, Ariz.R.P. Spec.Act., 17A A.R.S.

2. In this opinion, Restatement (Second) of Conflict of Laws (1971) will be referred to as Restatement § ——.

the application of the § 6 factors to tort issues. Section 145 provides that courts are to resolve tort issues under the law of the state having the most significant relationship to both the occurrence and the parties with respect to any particular question. Section 145(2) lists some of the contacts which are to be considered in determining the choice of law applicable to a given issue. Those especially relevant contacts include:

1. The place where the injury occurred;

2. The place where the conduct causing the injury occurred;

3. The domicile, residence, nationality, place of incorporation and place of business of the parties;

4. The place where the relationship, if any, between the parties is centered.

The inquiry is qualitative, not quantitative. *Ambrose v. Illinois–California Express Inc.*, 151 Ariz. 527, 530, 729 P.2d 331, 334 (App.1986). The court must evaluate the contacts "according to their relative importance with respect to the particular issue." Restatement § 145(2). The following specific qualitative guideline is given for personal injury cases:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement § 146 (emphasis added).

■ A threshold inquiry is whether § 146 applies to the present case. We conclude that § 146 is pertinent because plaintiff claims that the alleged bad faith acts of Nationwide caused her to suffer personal injury, mental and physical harm. Comment b to § 146 broadly defines the term "personal injury" as involving "either physical harm or mental disturbance" arising from "injury to oneself or to another." The bad faith refusal by an insurance company to pay critically needed benefits to an insured can certainly create sufficient mental distress to qualify as a "personal injury" under Arizona law. *See, e.g., Filasky v. Preferred Risk Mutual Insurance Co.*, 152 Ariz. 591, 597, 734 P.2d 76, 82 (1987) (in insurance bad faith case, jury awarded plaintiff $100,000 in damages for emotional distress).

## II. APPLICATION OF CHOICE OF LAW PRINCIPLES

We turn now to apply the relevant Restatement choice of law principles to the facts of this case.[3] We first direct our attention to the specific guidance provided on tort issues by Restatement § 145.

### A. The Place Where the Injury Occurred

■ In identifying the place where the injury in question occurred, we consider the various ways in which Nationwide has allegedly harmed plaintiff. When she learned of the termination of her benefits, plaintiff allegedly suffered mental and physical distress. Nationwide apparently compounded those difficulties by failing to reconsider its decision, forcing plaintiff to sue the company. Finally, plaintiff allegedly has experienced financial problems because of the unpaid medical bills. All of these mental, physical and financial injuries happened in Arizona, plaintiff's home state. Our independent determination that Arizona is the place of injury coincides with the opinions of the litigants and the trial court. *See* Petition for Review, at 5; Opposition to Petition for Review, at 11; Minute Entry Granting Partial Summary Judgment to Defendant, March 21, 1986, Exhibit 5, Petition for Special Action.

---

3. We have been unable to locate useful authority applying the Restatement's most significant contacts analysis to an interstate insurance bad faith claim. The issue has arisen in California, which uses a "governmental interest" choice of law approach. *See Ledesma v. Jack Stewart* *Produce, Inc.*, 816 F.2d 482 (9th Cir.1987); *Zimmerman v. Allstate Insurance Co.*, 179 Cal. App.3d 840, 224 Cal.Rptr. 917 (2d Dist.1986). Unfortunately, the Restatement and California approaches differ in material aspects, so we may not rely upon the latter for precedent.

B. The Place Where the Injury–Causing Conduct Occurred

Nationwide allegedly injured plaintiff through its bad faith practices. There is nothing in the record to suggest that any of that conduct occurred in Michigan. As far as activity in Arizona, the only Nationwide conduct that relates to the present claim is the independent medical examination. As we view the pleadings, plaintiff does not allege that the examination request was bad faith conduct. Nationwide appears to have made the termination decision solely from its Ohio headquarters, with the decision necessarily impacting plaintiff at her Arizona home.

C. Geographic Disposition of the Parties

■ This factor is inconclusive. Plaintiff lives in Arizona. Nationwide is incorporated in Ohio and has its corporate headquarters in that state, but conducts extensive business in Arizona. In a case such as this, where the injury is to plaintiff's personal interests, we give greater weight to the residence of the alleged tort victim. Restatement § 145 comment e.

D. Center of the Relationship Between the Parties

At the time of the events in question, the relationship between Nationwide and plaintiff was basically contractual and did not touch Michigan at all. Nationwide was paying policy benefits from Ohio to plaintiff in Arizona. Plaintiff's medical expenses were incurred in and submitted from Arizona, but accepted and finally rejected in Ohio. Because an insured is normally far more mobile than the insurer, however, the relationship would seem to be centered at the insurer's home office. In this case, that would be Ohio.

The application of either Arizona or Ohio law to the bad faith issue is therefore fully consistent with the guidelines provided by Restatement §§ 145 and 146. We are to apply these guidelines to the final choice unless they are contrary to the general factors of § 6.

E. General Factors; the Protection of Justified Expectations

Considering briefly the factors mentioned in Restatement § 6, we see little involvement in this case of the needs of the interstate and international legal systems. Moreover, Arizona, Michigan and Ohio all seek to protect their residents from insurance bad faith practices, thereby encouraging a responsible insurance industry to provide just compensation for injuries. *See, e.g., Noble v. National American Life Insurance Co.,* 128 Ariz. 188, 189–90, 624 P.2d 866, 867–68 (1981); *Commercial Union Insurance Co. v. Liberty Mutual Insurance Co.,* 426 Mich. 127, 393 N.W.2d 161 (1986); *Hoskins v. Aetna Life Insurance Co.,* 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983). Finally, a court in any of the three states could easily determine and apply the appropriate law and provide certainty, predictability and uniformity of result.

Thus, of the general guidelines suggested in Restatement § 6, we find most are neutral. The only general factor with which we are concerned in the present case is protecting the *justifiable* expectations of the parties. Restatement § 6 comment g. Nationwide asserts that it expected Michigan law would apply to the bad faith violation of an insurance contract admittedly crafted to comport with Michigan law, entered into by Michigan residents in Michigan, and initially adjusted by a Nationwide office in Michigan. We do not believe such expectations were justified.

As the trial court correctly concluded, Michigan was the "source" of the contract in this case. However, identifying the historical genesis of the underlying contract does not end the inquiry. The claim in question does not arise from breach of some express covenant inserted by Nationwide as a matter unique to its Michigan business. Its claim arises, rather, from breach of a good faith covenant implied in law. *See, e.g., Rawlings v. Apodaca,* 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986). That implied covenant is widely recognized throughout the country, including Michigan, at least in first-party cases. *See* Note, *Insurance Law: Emotional Distress*

*Damages in Commercial Contract Action*, 60 U.DET.J.URB.L. 120, 135–36 (1982) (author suggests that Michigan Supreme Court incorrectly rejected right to recover emotional distress damages in insurance bad faith action).

 In addition, the nature of the insurance business is such that even at the genesis of the contract, Nationwide would have known that its Michigan insureds might relocate or possibly be involved in accidents in other states and that claims would be adjusted in states other than Michigan. In short, because it provided coverage on a national basis, Nationwide necessarily knew that it might be required to perform its obligations as an insurer in any state in the union. It could not justifiably expect that every aspect of its conduct would be governed by the law of the state in which the contract originally was made. We reject the argument that the law of the state where the insurance contract was made must be applied to a bad faith claim arising from an accident in a different state, especially where the alleged bad faith conduct and resultant injury also occurred in different states and the insurer does business in those states.

Applying these principles to the elements of the transaction before us, we note that the conduct constituting the tort occurred in Ohio. Nationwide is domiciled in Ohio, but plaintiff lives in Arizona. Plaintiff suffered injury in Arizona. Thus, both Nationwide and plaintiff could reasonably expect that the insurer's conduct would be evaluated under the laws of either Arizona or Ohio, but not Michigan.

 Since the reasonable expectations of both parties are satisfied by the application of the law of either Arizona or Ohio, the essential question presented by the facts of this case is whether the law to be applied is that of the state where the tortious conduct occurred (Ohio) or that of the state in which such conduct caused injury (Arizona). Quantitatively, the factors of Restatement § 145 are almost evenly divided. However, the question is qualitative not quantitative, and under Restatement § 146, the law of the state "where the injury occurred" is determinative unless some other state has a more significant relationship. No other state having a more significant relationship, the law of Arizona is to be applied to plaintiff's bad faith claim.

### CONCLUSION

We conclude that Arizona does have the most significant relationship to the parties and to the facts which are the basis of the bad faith insurance issue. Therefore, the trial court should apply Arizona law to that issue. We vacate the trial court's order granting Nationwide's motion for partial summary judgment. Further proceedings shall conform to the principles contained in this opinion.

GORDON, C.J., and CAMERON and HOLOHAN, JJ., concur.

Justice James Moeller did not participate in the determination of this matter.