NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

KENNETH CALLIES and DORENE CALLIES, husband and wife,
*Plaintiffs/Appellants*,

*v.*

UNITED HERITAGE PROPERTY AND CASUALTY INSURANCE
COMPANY, a foreign corporation, *Defendant/Appellee*.

No. 1 CA-CV 13-0189
FILED 03/18/2014

---

Appeal from the Superior Court in Maricopa County
No. CV2012-005517
The Honorable Mark H. Brain, Judge

**REVERSED AND REMANDED**

---

COUNSEL

Dawson & Rosenthal PC, Sedona
By Steven C. Dawson, Anita Rosenthal
*Co-Counsel for Plaintiffs/Appellants*

Adelman German PLC, Scottsdale
By Steven J. German
*Co-Counsel for Plaintiffs/Appellants*

Thomas Thomas & Markson PC, Phoenix
By Neal B. Thomas
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Judge Lawrence F. Winthrop joined.

---

**J O N E S,** Judge:

**¶1** Kenneth and Dorene Callies, husband and wife (collectively, Callies), appeal the trial court's dismissal of their insurance bad faith cause of action against United Heritage Property and Casualty Insurance (United). For the reasons stated herein, we reverse and remand to the trial court.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2** The Callies maintained a homeowner's insurance policy with United. At the time they purchased the policy, the Callies were Oregon residents, while United was domiciled in Idaho and conducted business in multiple states, including Idaho, Oregon, Arizona, and Utah. The relevant policy covered the Callies' home in Eugene, Oregon, as well as their personal property "while it was anywhere in the world."

**¶3** In June 2011, the Callies moved from Oregon to Arizona. To this end, the Callies rented a moving truck and drove to Surprise, Arizona. As the Callies had not yet secured permanent living arrangements in Arizona, they rented a room from The Lodge at Sun Ridge for the nights of June 10 through June 14. The Callies were allowed to park their moving truck in The Lodge's parking lot during their stay.

---

[1] When reviewing the grant of a motion to dismiss, we assume the truth of the well-pleaded factual allegations contained within the complaint. *Logan v. Forever Living Prods. Intern., Inc.*, 203 Ariz. 191, 192, ¶ 2, 52 P.3d 760, 761 (2002).

¶4 On the morning of June 11, the Callies discovered their truck, containing all of their personal property, had been stolen during the night. The Callies notified both the Surprise Police Department and United of the theft that same day. On June 28, the truck was discovered by the Glendale Police Department, but the Callies' personal property had been removed.

¶5 Toward the administration of the Callies' insurance claim, United directed an Arizona adjustor to contact the Callies in Arizona and take their statements. The Callies also provided complete inventory lists of the property taken, per United's request. With that, United advised the Callies that payment on their claim would be forthcoming, and that the only remaining issue was to determine the exact amount due. Acting on such assurance, the Callies proceeded to purchase a house in Arizona.

¶6 However, rather than make the promised payment, United instead decided to initiate a fraud investigation into the Callies' claim. United informed them of this decision by telephone in August. Following the phone call, Kenneth began displaying behavioral issues, suffering from emotional and mental agitation and confusion.

¶7 Later in August, the Callies received another phone call, this time from an attorney representing United, in which they were told to have no direct contact with any person at United and were asked to agree to be questioned under oath. When Dorene explained she did not believe Kenneth would be able to handle the examination, the attorney concluded the phone call. The Callies heard nothing further from United for several months. During that intervening time period, Kenneth continued to suffer emotional and psychological problems, and on October 28, he was civilly committed to a mental health facility in Oregon.

¶8 On April 13, 2012, the Callies initiated suit against United and the Lodge at Sun Ridge and its owners (collectively, The Lodge). Within their complaint, the Callies alleged two claims: 1) insurance bad faith against United, and 2) negligence (premises liability) against The Lodge.[2]

¶9 United responded by filing a motion to dismiss for failure to state a claim. *See* Ariz. R. Civ. P. 12(b)(6). In its motion, United argued

---

[2] The Lodge did not join United's motion to dismiss, and is not a party to this appeal.

Oregon law, rather than Arizona law, should be applied, and that Oregon did not recognize a cause of action for first-party insurance bad faith. It also argued the doctrine of *forum non conveniens* mandated dismissal. To its motion, United appended a certified copy of the Callies' insurance policy, as well as a partial transcript of Dorene's examination under oath.

¶10 Within their response, the Callies argued to the contrary, asserting Arizona law should be applied, and that Arizona was not an inconvenient forum.[3] United replied, attaching, in support of its *forum non conveniens* argument, the Callies' Rule 26.1 disclosure statement to illustrate that a majority of the Callies anticipated witnesses lived in Oregon.

¶11 Following oral argument on United's motion to dismiss, the trial court, applying the principles delineated within the Restatement (Second) Conflict of Laws §§ 6 and 145 (1971), found Oregon law should apply, and granted United's motion to dismiss for failure to state a claim. In so finding, the trial court noted: (1) the Callies suffered the initial injury in Arizona but "the effects of [United's] conducts are continuing to be felt in Oregon, where [the Callies] reside;" (2) United's bad faith actions were centered in Oregon; (3) the Callies "were and are Oregon residents, but briefly lived in Arizona;" (4) United was an Idaho corporation that conducted business nationwide; (5) the parties' relationship was centered in Oregon; and (6) "Oregon's interests stand out – it has an interest in ensuring that its citizens are treated appropriately by insurers." While recognizing Arizona and Oregon differ in the treatment of insureds, the trial court did not find Oregon's treatment unfair.

¶12 The Callies sought reconsideration, which the trial court ultimately denied. The Callies then timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section 12-2101(A)(1) (2014).

**STANDARD OF REVIEW**

¶13 We review the grant of a Rule 12(b)(6) motion to dismiss de novo. *Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7, 284 P.3d 863, 866 (2012). Motions to dismiss for failure to state a claim are not favored in Arizona. *Acker v. CSO Chevira*, 188 Ariz. 252, 255, 934 P.2d 816, 819 (App.

---

[3] At no time did the Callies move to amend their pleading. *See* Ariz. R. Civ. P. 15(a)(1).

1997). Dismissal pursuant to Rule 12(b)(6) is appropriate if as a matter of law the plaintiff would not be entitled to relief under any interpretation of the facts. *Belen Loan Investors, LLC v. Bradley*, 231 Ariz. 448, 453, ¶ 7, 296 P.3d 984, 989 (App. 2012) (quoting *Coleman*, 230 Ariz. at 352, ¶ 8, 284 P.3d at 867) (internal quotations omitted).

**¶14** Choice of law issues are questions of law, which we review de novo. *Garcia v. General Motors Corp.*, 195 Ariz. 510, 516, ¶ 19, 990 P.2d 1069, 1075 (App. 1999).

## DISCUSSION

**¶15** On appeal, the Callies argue the trial court erred by granting United's motion to dismiss because it found Oregon law, rather than Arizona law, applied to this action. We agree.

I. Choice of Law

**¶16** The parties agree the choice of law determination is dispositive of this matter. Oregon courts do not recognize a separate tort cause of action for an insurance bad faith claim that stems from an insurer's refusal to pay benefits, instead holding that such an action sounds in contract. *See Emp'rs' Fire Ins. Co. v. Love It Ice Cream Co.*, 670 P.2d 160, 165 (Or. Ct. App. 1983). Arizona does allow such a tort action. *See Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 237, ¶ 20, 995 P.2d 276, 279 (2000); *Rawlings v. Apodaca*, 151 Ariz. 149, 160, 726 P.2d 565, 576 (1986); *Noble v. Nat'l Am. Life Ins. Co.*, 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981).[4] Therefore, if Oregon law applies to this dispute, the Callies will have failed to state a claim upon which relief may be granted; the converse being true if Arizona law applies.[5]

---

[4] Idaho, United's place of incorporation, similarly recognizes first party insurance bad faith as independently actionable in tort. *See Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 233 P.3d 1221, 1240 (Id. 2010); *White v. Unigard Mut. Ins. Co.*, 730 P.2d 1014, 1017 (Id. 1986).

[5] Neither party argues that Idaho law should be applied to this action, but rather focuses their arguments entirely on Oregon and Arizona law. As such, we discuss the Restatement contacts in Arizona or Oregon, and mention Idaho's contacts only when it would support an Arizona or Oregon contact. *See Bryant v. Silverman*, 146 Ariz. 41, 44 n.2, 703 P.2d 1190, 1193 n.2 (1985).

¶17            As the forum state, Arizona law will govern the choice of law determination. *See Cardon v. Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 206, 841 P.2d 198, 201 (1992). Arizona courts follow the Restatement (Second) of Conflict of Laws (1971) (Restatement) in determining the controlling law for multistate torts. *Pounders v. Enserch E & C, Inc.*, 232 Ariz. 352, 354, ¶ 8, 306 P.3d 9, 11 (2013); *Bates v. Superior Court of State of Ariz.*, 156 Ariz. 46, 48, 749 P.2d 1367, 1369 (1988).[6]

        A.      Restatement § 146

¶18            Restatement § 146, entitled "Personal Injuries," has been found applicable to insurance bad faith claims when sufficient mental distress or physical harm has been alleged, as in the immediate case. *See Bates*, 156 Ariz. at 49, 749 P.2d at 1370 ("We conclude that § 146 is pertinent because plaintiff claims that the alleged bad faith acts [of the defendant] caused her to suffer personal injury, mental and physical harm.").[7] Section 146 provides:

> [T]he local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some  other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

¶19            The "place of the injury," in the context of § 146, equates to the place where "the last event necessary for liability occurs." *Pounders*, 232 Ariz. at 356, ¶ 21, 306 P.3d at 13 (internal quotations omitted). Here, Kenneth began suffering emotional and psychological problems in Arizona immediately following United's informing the Callies their claim was being investigated. Further, the Callies allege having experienced

---

[6] We note that Oregon likewise applies the Restatement's "most significant relationship" approach to tort claims. *Spirit Partners, LP v. Stoel Rives LLP*, 157 P.3d 1194, 1200 (Or. Ct. App. 2007).

[7] United invites us to resolve the choice of law issue under Restatement § 193. We decline to do so, as Restatement § 193 applies to "[t]he validity of a contract of fire, surety or casualty insurance and the rights created thereby," which are not at issue in this case. Further, *Bates* illustrates that choice of law cases regarding multistate insurance bad faith claims are analyzed under Restatement §§ 6, 145 and 146. *Bates*, 156 Ariz. at 48-51, 749 P.2d at 1369-72.

extreme stress during the months they remained in Arizona due to United's decision to withhold payment on the Callies' claim during its investigation.

¶20        The Callies argue the place of the injury is determined at the time of the commission of the tort, leading to the conclusion that Arizona is the place of the injury.  United argues that, in this instance, "the place of injury is, at best, transitory," and therefore cannot be said to be Arizona, because bad faith is a continuing tort and the Callies have alleged they are continuing to suffer the effects of United's alleged bad faith in Oregon, where they now reside.[8]   We agree with the Callies that the place of injury is Arizona, as it was the state where they were located when they allege having initially suffered damage by virtue of United's actions.  *See Pounders*, 232 Ariz. at 356, ¶ 20, 306 P.3d at 13 ("Determining that the 'place of injury' is the place where the last event necessary for liability occurred (that is, the place where the injury manifested), which can only occur in one location, preserves the Restatement goals of certainty, predictability, and uniformity of result.").

B.        Restatement § 145

¶21        Having found that "[§] 146 initially suggests the application of [Arizona] law, we still must consider whether [Oregon] has a more significant relationship to the parties and the issue than does [Arizona]." *Garcia v. Gen. Motors Corp.*, 195 Ariz. 510, 517, ¶ 20, 990 P.2d 1069, 1076 (App. 1999); *see Bates*, 156 Ariz. at 49, 749 P.2d at 1370.  In doing so, we consider and analyze the factors outlined in Restatement § 145(2):

---

[8] United cites two cases, *White v. Western Title Insurance Company*, 40 Cal.3d 870 (Cal. 1985) and *Floyd v. Donahue*, 186 Ariz. 409, 923 P.2d 875 (App. 1996), as supportive of the argument that bad faith is a continuous tort.  Both cases are easily distinguishable, and neither supports their contention. *White* stands for the proposition that an insurer's duty of good faith does not terminate when a law suit is filed against it by an insured. *White*, 710 P.2d at 885-86.  *Floyd* addresses the implications of continuous torts in regards to the commencement of limitations periods, and does not enunciate insurance bad faith is such a continuous tort. *Floyd*, 186 Ariz. at 413, 923 P.2d at 879.  Neither support United's contention that the bad faith claim is a continuing tort, nor that the place of injury may be said to include a state where damages continue to accrue after they have already been incurred in another state.

(a) The place where the injury occurred,

(b) The place where the conduct causing the injury occurred,

(c) The domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) The place where the relationship, if any, between the parties is centered.

*Bates*, 156 Ariz. at 49, 749 P.2d at 1370; *Garcia*, 195 Ariz. at 517, ¶ 20, 990 P.2d at 1076.

¶22      The first factor, as previously established, weighs in favor of applying Arizona law. United consistently argues that the weight given this factor should be diminished because the injury occurring in Arizona was "merely fortuitous." *See Pounders*, 232 Ariz. at 357, ¶ 28, 306 P.3d at 14 (quoting Restatement § 145 cmt. e ("Situations do arise, however, where the place of injury will not play an important role in the selection of the state of the applicable law. . . . [W]hen the place of injury can be said to be fortuitous. . . .")). In support of this assertion, United notes that the theft and events giving rise to the Callies' insurance claim occurred on their first night in Arizona.

¶23      First, United's focus upon the theft occurring on the Callies' first night in Arizona as the basis for its assertion the injury is fortuitous is misplaced, as it is not the theft that gives rise to the allegation of tortious conduct, but rather United's actions, thereafter. The Callies' bad faith allegation is that they suffered injury as a result of United's unreasonable decision to launch an insurance fraud investigation. The theft of the rental truck, itself, was no more than the triggering event that lead to the Callies' insurance claim. It was United's handling of the claim in August, two months after the theft, which resulted in the Callies' complaint of injury.

¶24      Second, we determine that Arizona was not a fortuitous place of injury. An injury is only fortuitous when it "just happens to occur" in a particular state. *See id.* (finding manifestation of mesothelioma in Arizona was fortuitous as the injured could have moved anywhere following his exposure to asbestos in New Mexico); *Garcia*, 195 Ariz. at 517, ¶¶ 21-22, 990 P.2d at 1076 (finding Idaho was a fortuitous place of injury because the injured passengers of an automobile accident that occurred in Idaho were Arizona residents that were taking a trip to Washington with the intent to return to Arizona); *Baroldy v. Ortho Pharm. Corp.*, 157 Ariz. 574, 578-79, 760 P.2d 574, 578-79 (App. 1988).

8

¶25     The Callies had not only moved to Arizona, but proceeded with the purchase of a home by the time United determined to further investigate their claim. Further, the Callies had filed their insurance claim with United from Arizona. Unlike the cited cases where the injury was deemed fortuitous because the mere happening of the event in the state was considered random (such as a car accident or the manifestation of an injury stemming from prior toxic exposure), in this case the Callies' location at the time of their injury was not a random event as they had not only decided to reside in Arizona but had relocated to this State, with United subsequently directing its actions toward the Callies with full knowledge they, by then, resided in Arizona. *See* Restatement § 146 cmt. e ("The local law of the state where the personal injury occurred is most likely to be applied when the injured person has a settled relationship to that state, either because he is domiciled or resides there or because he does business there.").

¶26     The second factor, given this case's procedural posture, is unclear. The complaint merely alleges that United informed the Callies their claim was to be investigated by an United adjustor, without specifying which office they would be in contact with or where the adjustor was located. Naturally, both parties argue the conduct occurred in the locale that supports their position, with the Callies arguing the decision was made in Idaho and United arguing the conduct occurred in Oregon.[9] However, it is unlikely, based upon the facts alleged in the complaint and contained within the associated papers, the complained of conduct — United's decision to undertake an investigation of the Callies' claim — occurred in either Oregon or Arizona. *See Bates*, 156 Ariz. at 50, 749 P.2d at 1371 (noting the place where the injury-causing conduct occurred was found where the decision to terminate plaintiff's medical benefits was made, at Nationwide's headquarters); *see, e.g., Baroldy*, 157 Ariz. at 579, 760 P.2d at 579 (finding that in failure to warn cases "the 'place of conduct' is where the tortuous decision is made"). As the trial

_____

[9] This is common when conducting choice of law determinations at the motion to dismiss stage, as the choice of law inquiry is necessarily fact intensive, and at this stage discovery has yet to take place and the factual record has not been developed. *See Sioux Biochemical, Inc. v. Cargill, Inc.*, 410 F.Supp.2d 785, 799-800 (N.D. Iowa 2005); *Amiot v. Ames*, 693 A.2d 675, 678-79 (Vt. 1997); *see generally Coleman v. City of Mesa*, 230 Ariz. 352, 363, ¶ 46, 284 P.3d 863, 874 (2012) ("In adjudicating a Rule 12(b)(6) motion to dismiss . . . a court does not resolve factual disputes between the parties on an undeveloped record.").

court found, United's place of incorporation is Idaho. Further, Idaho appears to also be United's principal place of business, as the address given for United in the Callies' policy is in Meridian, Idaho. [10]

¶27 When reviewing a dismissal pursuant to Rule 12(b)(6), we assume the truth of the well-plead allegations contained within the complaint, as well as all reasonable inferences arising from those facts. *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7, 189 P.3d 344, 346 (2008). In this instance, where the facts alleged the Callies were told by a United adjustor, rather than the insurance agent (Gambill Insurance Agency) from whom the Callies purchased their policy in Oregon, that an investigation of their claim was going to commence, it is reasonable to infer that the decision to investigate their claim was made at United's principal place of business – Idaho – rather than in another State where it simply conducts business. Therefore, this factor does not particularly weigh in favor of either state's law being applied. However, as Idaho recognizes a tort action for insurance bad faith, we may consider this factor as weighing in favor of the application of Arizona law. *See Baroldy*, 157 Ariz. at 579, 760 P.2d at 579 (noting that "when the law of two states does not conflict, the contacts from those two states should be considered as if they were from the state involved in the choice of law question") (citing Restatement § 145 cmt. i).

¶28 The third factor favors the application of Arizona law. The Callies were domiciled in Arizona at the time of the alleged bad faith. They had moved themselves and their belongings to Arizona and purchased a home with the intent to remain. *Arizona Bd. Of Regents v. Harper*, 108 Ariz. 223, 228, 495 P.2d 453, 458 (1972) ("Domicile is primarily a state of mind combined with actual physical presence in the state."). Although they have now returned to Oregon, such bears little significance to this factor. *See Summers v. Interstate Tractor & Equip. Co.*, 466 F.2d 42, 48 n.3 (9th Cir. 1972) (noting that the change of domicile to another state should carry no weight in deciding which law applies, as granting weight to it would encourage forum shopping) (citing *Reich v. Purcell*, 67 Cal.2d

---

[10] The insurance policy was introduced by United in its motion to dismiss. Although it is not a matter contained within the pleadings, *see* Rule 12(b), the complaint itself referenced this specific policy and the policy is central to the Callies' claim against United. *Strategic Dev. & Constr., Inc. v. Roosevelt Partners, L.L.C.*, 224 Ariz. 60, 64, ¶ 14, 226 P.3d 1046, 1050 (App. 2010). Therefore, in reviewing the motion to dismiss, we may consider the information contained within the certified policy.

551, 555 (Cal. 1967)); *see also Pounders*, 232 Ariz. at 358, ¶ 32, 306 P.3d at 15 (stating the place of the plaintiff's current domicile was entitled to little weight as he could have relocated to anywhere following his asbestos exposure); *see, e.g.*, Restatement Intro. Note, ch. 7 (although not taking a specific stance, noting that a party's change in domicile following the commission of the tort but prior to the commencement of litigation should "[p]resumably[] . . . have no effect upon the law governing most of the issues involving the [tort]"). United, on the other hand, is incorporated and maintains its principal place of business in Idaho, while licensed to conduct business in several states, including both Arizona and Oregon. In a personal injury case, "we give greater weight to the residence of the alleged tort victim." *Bates*, 156 Ariz. at 50, 749 P.2d at 1371 (citing Restatement § 145 cmt. e).

¶29 The fourth factor, similar to the second, is unclear based upon the record. The Callies were Oregon residents when they purchased their United insurance policy from an Oregon insurance agent toward insuring their Oregon home and personal possessions. Nevertheless, at the time of the alleged bad faith, the Callies had relocated to Arizona, wherefrom their insurance claim to United was submitted and adjusted. Because insureds possess greater mobility than insurers we generally assume the relationship is centered at the insurer's headquarters. *Id.* In the immediate case, that is Idaho. Again, as Idaho and Arizona law is harmonious, we may consider this factor to weigh in favor of applying Arizona law. *See Baroldy*, 157 Ariz. at 579, 760 P.2d at 579 (citing Restatement § 145 cmt. i).

¶30 In total, the first and third factors weigh in favor of Arizona law, while factors two and four arguably weigh toward either Idaho or Arizona law. However, this is a qualitative, rather than quantitative analysis. *Bates*, 156 Ariz. at 51, 749 P.2d at 1372; *see* Restatement § 145. Under § 146, "the law of the state 'where the injury occurred' is determinative unless some other state has a more significant relationship." *Bates*, 156 Ariz. at 51, 749 P.2d at 1372 (citing Restatement § 146).

C. Restatement § 6

¶31 Having determined the factors from § 145 illustrate Arizona has greater contacts relevant to this dispute, we still may only apply Arizona law if doing so would be consistent with the principles stated in Restatement § 6. *Pounders*, 232 Ariz. at 358, ¶ 35, 306 P.3d at 15; *Bates*, 156 Ariz. at 50, 749 P.2d at 1371; Restatement § 145(1)-(2). Section 6(2) sets

forth general principles to be applied in every choice of law determination:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

¶32        In this case, the first, fifth, and seventh factors are insignificant. The needs of the interstate and international systems are not implicated or affected by the application of either Oregon or Arizona law. *See Bates*, 156 Ariz. at 50, 749 P.2d at 1371. Likewise, both states would be easily able to determine and apply either state's law. *See Garcia*, 195 Ariz. at 519, ¶ 27, 990 P.2d at 1078.

¶33        United argues that the fourth factor, the protection of justified expectations, weighs in favor of Oregon having a more significant relationship to this dispute because the contract originated in Oregon and none of the parties could have expected the Callies to gain greater contractual rights by moving to Arizona. United's assertion creates a misnomer, as the claim alleged sounds in tort, and in no way expands the Callies' "contractual benefits." Further, however, we simply disagree with the argument as the very language of United's insurance contract specifically asserted the contracted-for coverage for personal property applied anywhere in the world. United could not have believed that no matter where the Callies moved and regardless of the circumstances giving rise to a claim or subsequent actions following a claim being filed, throughout the world, Oregon law would apply.

¶34        Additionally, the claim is not one arising "from breach of some express covenant inserted by [United] as a matter unique to its [Oregon] business. [It instead] arises, rather, from breach of a good faith

covenant implied in law." *Bates*, 156 Ariz. at 50, 749 P.2d at 1371. *Bates* rejected the argument that the law of the state where the contract was entered into (here, Oregon) necessarily is applied to a bad faith claim arising from conduct and resulting injury occurring in another state (here, Idaho and Arizona respectively). *Id.* at 51, 749 P.2d at 1372. Any expectations that would be the case are unjustified. *Id.* at 50, 749 P.2d at 1371. Further, "the protection of the justified expectations of the parties . . . is of lesser importance in the field of torts." Restatement § 145 cmt. b. The underlying purpose of this policy is to avoid penalizing a person for conforming to the law of one state "when he had justifiably molded his conduct to conform to the requirements of another state," which is less of a concern in the area of torts. Restatement § 6 cmt. g. Even assuming this policy carried great relevance to the tort of bad faith, this factor does not weigh in favor of Oregon law, as United did not justifiably mold its conduct to conform to the law of Oregon. Oregon does not excuse liability for insurer's bad faith actions, but rather limits any cause of action to contract claims. *Emp'rs' Fire Ins. Co.*, 670 P.2d at 165.

¶35 United also argues the application of Oregon law would best serve the policies, provided in factors six and seven, of "certainty, predictability, and ease of determination." Specifically, it argues Oregon law would provide greater ease because the tort is not recognized, therefore the trial court would not have to go through the task of "consider[ing] a vast array and detailed analysis of the handling of a claim under the bad faith tort." Succinctly stated, if this Court, on appeal, were to decide in favor of United, any bad faith claim would be eliminated. However, this policy bears no weight in our analysis as this principle is concerned with "choice-of-law rules [being] simple and easy to apply," and both Oregon and Arizona follow the Restatement's choice of law approach. Moreover, the principle of certainty and predictability of result is more significant in areas where "the parties are likely to give advance thought to the legal consequences of their transactions," such as the effect and validity of a contract or will. *Bryant*, 146 Ariz. at 46, 703 P.2d at 1195; Restatement §§ 6 cmt. j, 145 cmt. b. In the immediate matter, the parties gave no such advance thought to the legal consequences of the alleged bad faith actions.

¶36 The remaining principles require consideration of the policies and interests of the forum state and other interested states. Restatement § 6(2)(b)-(c). These two principles gain greater significance due to the limited importance of the other § 6 principles in tort cases. *Pounders*, 232 Ariz. at 359, ¶ 39, 306 P.3d at 16; *see* Restatement § 145 cmt. b (noting that the relevant polices in tort cases usually are the policies of the

forum and other interested states). These policies are compared with particular weight being given to the Arizona's policy, as it is the dominant state. *See Pounders*, 232 Ariz. at 359, ¶ 40, 306 P.3d at 16 (citing Restatement § 145 cmt. b).

**¶37** Oregon and Arizona's policies regarding insurance bad faith are drastically different. Arizona recognizes that conduct constituting insurance bad faith may cause a person to suffer more than mere economic injuries, and thus recognizes it as a tort. *Noble v. Nat'l Am. Life Ins. Co.*, 128 Ariz. 188, 189-90, 624 P.2d 866, 867-68 (1981); *Bates*, 156 Ariz. at 49, 749 P.2d at 1370. Oregon, however, limits bad faith causes of actions to contract, thus making emotional or physical damages unrecoverable. *Emp'rs' Fire Ins. Co.*, 670 P.2d at 790.

**¶38** As the policies of the states are substantially different, we turn to the interests of the respective states. Arizona has a strong interest in ensuring its residents are made whole for injuries sustained while in Arizona. *Bryan*, 146 Ariz. at 47, 703 P.2d at 1196. Toward that end, it allows recovery for plaintiffs injured by insurance bad faith practices to recover all damages caused by an insurer's conduct, including economic and emotional damages.[11] *Rawlings*, 151 Ariz. at 161, 726 P.2d at 577. It also has a strong interest in deterring wrongful conduct directed against its citizens. *Pounders*, 232 Ariz. at 359, ¶ 41, 306 P.3d at 16. Oregon's interests, on the other hand, are limited here, where the insureds were Arizona residents at the time of the complained of conduct, the conduct occurred outside of Oregon, and the tortfeasor is incorporated in Idaho. Although United conducts business in Oregon, this creates no greater interest in Oregon as United equally conducts business in Arizona.

**¶39** After weighing the relevant principles of §§ 6, 145 and 146, we find Arizona has the more substantial interest to this occurrence, and, therefore, Arizona law is appropriately applied, even though neither party is currently a domiciliary of the State. *See, e.g.*, *Jackson v. Chandler*, 204 Ariz. 135, 139, ¶ 18, 61 P.3d 17, 21 (2003) ("[W]e believe Arizona has a substantial interest in permitting the present action in this forum even though no party is a domiciliary of Arizona.").

---

[11] Punitive damages, however, are not automatically recoverable, but may only be recovered if the plaintiff can demonstrate the insurer's wrongful conduct was done with an intent to injure the plaintiff or done with knowledge that the conduct created a substantial risk of harm. *Rawlings*, 151 Ariz. at 162, 726 P.2d at 578.

II.      Rule 12(b)(6)

¶40      Finding that Arizona law should be applied, we turn to the Callies' complaint to determine whether a claim upon which relief can be granted has been asserted.  In regard to United, the complaint alleges one cause of action for insurance bad faith.  That cause of action consists of two elements: "(1) that the insurer acted unreasonably toward its insured, and (2) that the insurer acted knowing that it was acting unreasonably or acted with such reckless disregard that such knowledge may be imputed to it."  *Miel v. State Farm Mut. Auto. Ins. Co.*, 185 Ariz. 104, 110, 912 P.2d 1333, 1339 (App. 1995).  The insurer's actions must be intentional; mere mistake and inadvertence are insufficient to establish a bad faith claim.  *Id.* (citing *Rawlings v. Apodaca*, 151 Ariz. 149, 157, 726 P.2d 565, 573 (1986)).

¶41      Within their complaint, the Callies allege they notified police and United of the theft the day it occurred.  The stolen truck was found completely empty and abandoned on the side of the road almost three weeks later.  A month or so following the theft, a suspect was arrested and had in his possession a gun which had been packed in the moving truck at the time the truck was stolen.  Further, a motorcycle taken from the truck was found abandoned and damaged on the side of the road.

¶42      The Callies met with an adjustor and provided detailed lists of the property taken, as per United's request.  Thereafter, the Callies were informed their payment would be forthcoming, only later to be told payment was not being processed as their claim was being investigated without being provided an explanation for the investigation.  They received a phone call in August 2011 from a lawyer representing United who advised the Callies they were to no longer attempt to contact their own insurer and requested they submit to examinations under oath.  Dorene expressed doubt during the call that Kenneth was capable of undergoing such an examination.  Thereafter, several months passed before the Callies had any further contact from United or its representatives.

¶43      Taking these allegations as true and drawing all reasonable inferences there from in favor of the Callies, the Callies have alleged sufficient facts to support a tort bad faith claim and withstand United's Rule 12(b)(6) motion.  *See Coleman*, 230 Ariz. at 356, ¶ 8, 284 P.3d at 867 (dismissal pursuant to Rule 12(b)(6) is appropriate only if "as a matter of

law plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof").[12]

III.     *Forum Non Conveniens*

**¶44**          Within its motion to dismiss, United also argued the claim against it should be dismissed because Arizona was an inconvenient forum.   The trial court did not rule on United's *forum non conveniens* argument when it dismissed the case against it, although both parties addressed the argument in the course of their motion practice. Nonetheless, United urges us to uphold the trial court's dismissal order on *forum non conveniens* grounds.  *See Glaze v. Marcus*, 151 Ariz. 538, 540, 729 P.2d 342, 344 (App. 1986) ("We will affirm the trial court's decision if it is correct for any reason, even if that reason was not considered by the trial court.").   As this issue will likely arise on remand, we address United's argument and find that *forum non conveniens* is inappropriate in this case.

**¶45**          "*Forum non conveniens* is 'an exceptional tool to be employed sparingly' rather than a 'doctrine that compels plaintiffs to choose the optimal forum for their claim."  *Parra v. Continental Tire North Am., Inc.*, 222 Ariz. 212, 214, ¶8, 213 P.3d 361, 363 (App. 2009) (citing *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000)).  A plaintiff is afforded the ability to choose a forum, and this choice should only be disturbed for weighty reasons.  *Cal Fed Partners v. Heers*, 156 Ariz. 245, 246, 751 P.2d 561, 562 (App. 1987)).  However, a plaintiff's forum choice is afforded less credence if he is not a resident of the chosen forum.  *Id.*

**¶46**          To prevail on a *forum non conveniens* argument, the defendant must demonstrate two things: (1) that there is an available and adequate alternative forum to hear the case, and (2) that the alternative forum, on balance, is a more convenient place to litigate the particular case.  *Parra*, 222 Ariz. at 215, ¶¶ 9-10, 213 P.3d at 364.  As to the first prong, United stipulated it would agree to service and jurisdiction in Oregon, making it an adequate alternative forum.  *See* Restatement § 84 cmt. e ("[A] court which finds itself to be an inappropriate forum under the rule of this Section must dismiss the action outright, or do so conditionally (as

---

[12] As we find Arizona law should apply and the complaint states a proper claim, we do not address the Callies' argument on appeal that the trial court considered matters outside the pleading in reaching its decision and therefore should have converted the motion to dismiss into one for summary judgment.

by requiring that the defendant stipulate to accept service of process . . . in some second state that is deemed a more convenient forum).").

¶47        The second prong requires the balancing of private and public reasons of convenience. *Parra*, 222 Ariz. at 215, ¶10, 213 P.3d at 364. The private factors to be considered include: the relative ease of accessing sources of proof, availability of a compulsory process to have unwilling witnesses attend, the cost of obtaining the attendance of willing witnesses, and all other practical problems that contribute to an expeditious and inexpensive trial. *Id.* at ¶ 12 (citing *Cal Fed Partners*, 156 Ariz. at 246, 751 P.2d at 562).

¶48        With regard to sources of proof, United argues a majority of the witnesses the Callies disclosed in their Rule 26.1 statement reside in Oregon and are therefore unable to be summoned to Arizona for trial. These witnesses fall into three categories: (1) the Callies' relatives, who would presumably avail themselves to be summoned to testify in Arizona, (2) medical personnel that will testify as to Kenneth's need for medical treatment and his prognosis, and (3) people associated with United or the Callies' insurance policy and claim. There are also identified witnesses who reside in Arizona, a majority being law enforcement officers, as well as the adjustor United dispatched to the Callies' Arizona residence.

¶49        Although there are more witnesses identified from Oregon than Arizona, evaluation of this factor does not simply look at the comparison of the number of witnesses from the locations, but at the "materiality and importance of the anticipated witnesses' testimony and then . . . their accessibility and convenience to the forum." *Id.* at 216, ¶13, 213 P.3d at 365 (citing *Great Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984). United has not offered any explanation as to why regular discovery methods would be insufficient to gain information from the identified Oregon witnesses, or why those witnesses' testimony is so significant it would require dismissal if they were not willing to travel to Arizona to testify. The majority of the witnesses relate to the medical treatment Kenneth received, and as it is the Callies' burden to prove their damages, it ultimately is them that would be harmed if they are unable to procure those witnesses' testimony. Further, with respect to the Oregon witnesses associated directly with United, United clearly has the ability to interview them.

¶50        Weighing in favor of Arizona being an inconvenient forum are the undeniable increased costs, to both parties, of procuring out of state witnesses' testimony at trial, with these costs being unrecoverable

from the superior court. *See* A.R.S. § 12-332 (2014); *Ponderosa Plaza v. Siplast*, 181 Ariz. 128, 134, 888 P.2d 1315, 1321 (App. 1993). However, this concern is countered by the added expense the Callies would have to incur to separately litigate their two, to a certain extent, factually overlapping claims — one against United and the other against The Lodge — in two separate states with separate local counsel, as The Lodge is not subject to personal jurisdiction in Oregon. *See, e.g., Coonley & Coonley v. Turck*, 173 Ariz. 527, 533, 844 P.2d 1177, 1183 (App. 1993)

¶51 Also to be considered are several public factors, including: the administrative burden the lawsuit may place on the court's docket, having citizens from a disinterested community to serve on a jury, and the law that will govern the case. *Parra*, 222 Ariz. at 217, ¶ 20, 213 P.3d at 366.

¶52 These factors weigh heavily against Oregon being the more appropriate forum. United argues the first factor, limiting the burden of litigation in congestion centers, clearly favors Eugene, Oregon, over Phoenix, Arizona. This factor is concerned "not [with] whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." *Id.* at 218, ¶24, 213 P.3d at 367. United did not support its motion with any evidence that this litigation would be resolved any quicker in an Oregon court.

¶53 United also argues there are not enough contacts to Arizona to justify an Arizona jury having to sit for this dispute. As we noted, Arizona indeed does have a number of contacts to this dispute. Although the policy was originally purchased in Oregon and the Callies are now residing in Oregon, the bad faith conduct caused an injury to the Callies while they were Arizona residents. Also, United is licensed and conducts business in Arizona, selling nearly identical policies to Arizona residents. Arizona's significant interests in this case make it appropriate for Arizona jurors to hear it. Furthermore, the third factor clearly weighs against dismissal as we have found that Arizona law will govern the parties' dispute.

¶54 Considering the private and public factors together, we cannot say they weigh so strongly in favor of Oregon that dismissal is appropriate. Indeed, the public factors actually weigh strongly against dismissal in this case. We therefore conclude United has not met its burden to dismiss the case upon grounds of *forum non conveniens*. *See Parra*, 222 Ariz. at 215, ¶ 10, 213 P.3d at 364 ("Where factors of convenience are closely balanced, the plaintiff is entitled to its choice of forum.") (citing *Cal Fed Partners*, 156 Ariz. at 248, 751 P.2d at 563).

**CONCLUSION**

**¶55**      For the foregoing reasons, we find Arizona law applies. Accordingly, we reverse the trial court's dismissal of the Callies' claim against United, vacate the trial court's minute entry dismissing the Callies' claim against United, and remand to the trial court with instructions to deny United's motion to dismiss and for such further proceedings as are consistent with this decision.[13]



Ruth A. Willingham · Clerk of the Court
FILED: gsh

---

[13] Both sides request attorneys' fees on appeal pursuant to A.R.S. § 12-341.01 (2014). As neither party has yet to prevail on the merits of the case, we deny both parties' requests for fees. On remand, the trial court may consider a request from the prevailing or successful party for fees incurred in this appeal.